**WEISS & SPEES, LLP**
Michael H. Weiss (State Bar No. 107481)
Laura J. Meltzer (State Bar No. 151889)
1925 Century Park East, Suite 650
Los Angeles, California 90067
Telephone: (424) 245-3100
Facsimile: (424) 245-3199
mw@weissandspees.com

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | ) Case No.: 01:08-bk-17254-MT |
| | ) |
| KARYKEION, Inc., a California corporation, | ) Chapter 11 |
| DBA COMMUNITY AND MISSION | ) |
| HOSPITAL OF HUNTINGTON PARK, DBA | ) **[Chapter 11** |
| PHYSICIANS SUPER CENTERS, INC.,** | ) |
| | ) **EMERGENCY MOTION OF DEBTOR** |
| | ) **FOR ORDERS (A) AUTHORIZING** |
| | ) **DEBTOR TO (i) OBTAIN POST-** |
| | ) **PETITION FINANCING AND** |
| | ) **GRANTING SECURITY INTERESTS** |
| | ) **AND SUPERPRIORITY** |
| Debtor. | ) **ADMINISTRATIVE EXPENSE STATUS** |
| | ) **PURSUANT TO 11 U.S.C. § 364; (ii) USE** |
| | ) **CASH COLLATERAL PURSUANT TO 11** |
| | ) **U.S.C. § 363; (iii) TO PROVIDE** |
| | ) **ADEQUATE PROTECTION PURSUANT** |
| | ) **TO 11 U.S.C. §§ 361; AND (B)** |
| | ) **SCHEDULING A FINAL HEARING AND** |
| | ) **ESTABLISHING RELATED NOTICE** |
| | ) **REQUIREMENTS; DECLARATIONS OF** |
| | ) **MICHAEL H. WEISS ;DANIEL J. ANSEL,** |
| | ) **AND JAMES MACPHERSON; EXHIBITS** |
| | ) **1, 2 AND 3** |
| | ) |
| | ) Hearing: |
| | ) Date: February 1, 2010 |
| | Time: 11:00 a.m. |
| | Place: Courtroom 302 |
| | 21041Burbank Boulevard |
| | Woodland Hills, CA |

Printed on Recycled Paper

Debtor and Debtor in possession hereby moves the Court for Orders (A) Authorizing Debtor To (I) Obtain Post-Petition Financing And Granting Security Interests And Superpriority Administrative Expense Status Pursuant To 11 U.S.C. § 364; (II) Use Cash Collateral Pursuant To 11 U.S.C. § 363; (III) To Provide Adequate Protection Pursuant To 11 U.S.C. §§ 361; And (B) Scheduling A Final Hearing And Establishing Related Notice Requirements (the "Motion"). In support of the Motion, Debtor, respectfully represents:

## I. SUMMARY OF RELIEF REQUESTED HEREIN

1. By this Motion, Debtor requests entry of an interim order substantially in the form annexed hereto as **Exhibit "1"** (the "Interim Order") and thereafter a final order (the "Final Order" together, the "DIP Financing Orders") as follows:

    a. Authorizing, on an interim and permanent basis, Debtor to:

        (i) Obtain, pursuant to Sections 364(c), (d) and (e)[1], post-petition financing in the form of a $1,000,000 debtor in possession credit facility (the "DIP Facility") pursuant to the terms of that certain Bridge Financing Agreement Debtor in Possession Credit Agreement (the "DIP Financing Agreement") in a form substantially to similar to the one annexed hereto as **Exhibit "2,"** by and among Avanti Health Systems, as lender (the "DIP Lender") and Debtor as borrower; and

        (ii) Grant to the DIP Lender, (A) pursuant to Sections 364(c)(2), (c)(3) and (d), as security for repayment of all obligations arising under the DIP Facility, security interests in and liens on substantially all assets of the Debtor, in accordance with the DIP Financing Agreement, subject to (x) the Carve-Out (as defined below) and (y) certain other specified permitted liens as more fully described below and in the Interim Order; and (B) superpriority

---

[1] Unless otherwise noted, all references to "Section" refer a section of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Code"). All references to "Rule" refer to the Federal Rules of Bankruptcy Procedure. All references to "LBR" refer to the local rules of this Court.

Printed on Recycled Paper

administrative expense claim status pursuant to Sections 364(c), 503(b) and 507 subject to the Carve Out and certain other claims as more fully described below or in the Interim Order;

b. Pursuant to sections 361, 363(c)(2) and 363(e), authorizing Debtor to use Collateral, including Cash Collateral (each as defined in the Interim Order), and to provide certain protections to CHHP, Inc., Huntington Park Doctors Group, LLC and Cardinal Health (collectively, the "Prepetition Lenders") with respect to any diminution in value of such parties' interest in their Collateral resulting from the implementation of the DIP Credit Facility, the use, sale or lease of the their Collateral or the imposition of the automatic stay pursuant to Section 362;

c. Approving the terms and conditions of the DIP Financing Agreement and the documents to be executed in connection therewith, and authorizing Debtor to execute and deliver, from time to time, all such documents, instruments and agreements and perform such other acts as may be required, necessary or desirable in connection with the DIP Financing Agreement including, without limitation, the payment of all fees, interest and charges required under the DIP Financing Agreement;

d. Authorizing, pursuant to the Interim Order, Debtor to borrow funds under the DIP Facility and in accordance with the Budget (as defined in the DIP Financing Agreement), a copy of which is annexed hereto as **Exhibit "3"**, including to apply the proceeds of Prepetition Collateral to repay amounts owing under the DIP Facility, in each case on an interim basis through and including the date of a final hearing regarding the Motion (the "Final Hearing");

e. Authorizing Debtor, after entry of a Final Order, to borrow funds under the DIP Facility on a permanent basis including to fund Debtor's working capital needs and for other purposes as provided in the DIP Facility and in accordance with the Budget;

Printed on Recycled Paper

1       f.      Modifying the automatic stay under Section 362 to the extent necessary to permit

the DIP Lenders to implement the terms and other provisions of the DIP Financing

Agreement and the DIP Financing Orders; and

g.      Scheduling and approving the form and manner of notice of the Final Hearing.

2.      Debtor respectfully submits that the requested relief is critical to its ability to continue to sell its assets to Avanti as set forth in its First Amended Plan of Liquidation filed on January 18, 2010 [Docket No. 730] (the "Plan"). By facilitating that sale, Debtor will be able to fund the Plan, pay secured creditors the full amount of their pre-petition secured claims and preserve its right to receive approximately $15.4 million in funds payable to Debtor under Medi-Cal Hospital Provider Rate Stabilization Act (California Welfare & Institutions Code §§ 14167.1-14167.17) (the "AB 1383 Funds").

3.      To receive the AB 1383 Funds, Debtor must remain open. California Welfare & Institutions Code §§ 14167.8. As set forth in the attached declarations and exhibits, funds advanced under the DIP Facility will allow Debtor to remain open through the end of March, the projected confirmation date of the Plan. Absent the DIP Facility, Debtor will close and therefore fail to receive the AB 1383 Funds. In that event, Debtor will become administratively insolvent and general unsecured creditors will receive nothing.

4.      The financing arrangements proposed herein are reasonable and necessary, serve the best interests of Debtor's creditors and estates, and should be approved in all respects.

5.      Likewise, Debtor can demonstrate that it can provide adequate protection to the Prepetition Lenders in that the value of their collateral (primarily accounts receivable) have accreted by an amount equal to the amount of the proposed facility since the commencement of this case. Ansel Decl. ¶ 2. Further, the sale to Avanti will lead to the full payment of their allowed secured claims through the Plan in less than 60 days.

6.      The Court has jurisdiction over this Motion under 28 U.S.C. § 1334.

7.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) in that it is a matter concerning the administration of Debtor's estate.

8.      Venue of these proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

Printed on Recycled Paper

## II. PROPOSED DEBTOR IN POSSESSION FINANCING

**A.    THE CRITICAL NEED FOR POST-PETITION FINANCING**

9.    All of Debtor's assets are encumbered by the prepetition liens and security interests of the Prepetition Lenders. As such, Debtor has no unencumbered funds with which to pay ongoing wages, salaries and day-to-day operating expenses vital to sustaining its business operations.

10.    Debtor's operations depend upon uninterrupted access to necessary working capital. Therefore, immediate access to the DIP Facility will prevent irreparable harm to Debtor's estate. The DIP Facility also is necessary to provide assurance to employees, utilities and other parties that they will be paid on a timely basis for post-petition services. Without the DIP Facility, Debtor's day-to-day operations would come to a halt, a result that would devastate Debtor's attempts to maximize the value of its assets through the pursuit of a sale process to Avanti under the Plan. Ansel Decl., ¶ 3.

11.    The Debtor also submits that, other than the DIP Facility, there are no viable financing alternatives available to them under the circumstances. Ansel Decl. ¶ 4.

12.    The time to find alternative financing on more favorable terms to address Debtor's immediate liquidity needs through the closing of the sale to Avanti on or about March 31, 2010 could result in a protracted priming contest with the Prepetition Lenders, the results of which could not be predicted with certainty. Such uncertainty would doom Debtor to an almost immediate liquidation resulting in administrative insolvency and no distribution to unsecured creditors. On the other hand, the DIP Financing provides a bridge in the truest sense of the word to allow Debtor to consummate the sale to Avanti permitting full repayment of secured creditors and receipt of $15.4 million in AB 1383 Funds.

13.    Thus, Debtor cannot obtain alternative post-petition financing through credit allowable as an administrative expense, or credit secured by liens on Debtor's assets junior to the liens of the Prepetition Lenders. Ansel Decl. ¶ 5. In these circumstances, Debtor, in the exercise of its considered business judgment, has determined that the DIP Facility provides the most

Printed on Recycled Paper

favorable, if not only, alternative and the liquidity needed to get to the AB 1383 Funds, which Debtor expects to be paid in July.

14.   The DIP Facility provides the Debtor with continued financing pursuant to (i) the terms of the DIP Financing Agreement, for the purposes specified in the Budget (Exhibit "3") pending final approval of the DIP Facility.

**B.   OVERVIEW OF THE PROPOSED DIP FACILITY**

15.   The principal terms of the DIP Facility are as follows:[2]

| | |
|---|---|
| DIP Facility: | A senior secured, superpriority revolving credit facility in an aggregate amount of up to $1,000,000.00. |
| DIP Lender: | Avanti Health Systems, LLC ("Avanti") or its designee |
| Purpose: | The DIP Facility will be used to finance Debtor's working capital and general corporate purposes through consummation of the sale of Debtor's asset to Avanti under the Plan. |
| Borrowing Base: | Debtor's accounts receivable of no greater than 150 days old |
| Interest: | Ten percent (10%) per annum ("Base Rate") with default rate interest at the Base Rate plus three percent (3%). |
| Superpriority Lien: | Avanti shall be granted, pursuant to Sections 364(c)(2), 364(c)(3) and 364(d)(1) a lien in Debtor's accounts receivable priming, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests and liens (as defined in the Interim Order, the "DIP Liens"), senior and superior to all other secured and unsecured creditors of Debtor's estate (the "Estate"). Said lien extends to all presently owned and hereafter acquired accounts receivable of Debtor, including, without limitation, |

---

[2]   This section contains a summary of the principal provisions of the DIP Facility; the Court and other parties in interest, however, are respectfully referred to the DIP Financing Agreement, and the Interim Order for a more extensive recitation of the terms and conditions of the DIP Facility.

Printed on Recycled Paper

| | | |
|---|---|---|
| | | any Prepetition Collateral and any Disproportionate Share Hospital payments received from either California or the Federal governments. The DIP Lien shall be first, valid, prior, perfected, unavoidable and superior to any other liens and security interests in Debtor's post-petition accounts receivable only. The DIP Liens shall <u>not</u> include a lien on (a) any avoidance action under Chapter 5 of the Code or the proceeds thereof, other than proceeds of any avoidance action brought pursuant to Section 549 to recover any unauthorized transfer of post-petition transfer of Collateral after recovery of all costs incurred to make any such recovery and (b) a lien or security interest directly on any lease or leasehold interest, but only the proceeds thereof. |
| | <u>Superpriority Administrative Claim</u> | All DIP Obligations shall be an allowed superpriority administrative expense claim (the "DIP Super-Priority Claim" and, together with the DIP Liens, the "DIP Protections") with priority (except as otherwise provided in the paragraph 8 of the Interim Order) in Debtor's case under Sections 364(c)(1), 503(b), and 507(b) and otherwise over all administrative expense claims and unsecured claims against Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to Sections 105, 326, 328, 330 (except as otherwise provided in paragraph 8 of the Interim Order), 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726(b), 1113, and 1114, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. |

Printed on Recycled Paper

| | |
|---|---|
| Term: | All obligations under the DIP Credit Facility, accrued or otherwise, will be due and payable in full on the earliest to occur of (i) the first business day after 120 days after the entry of the Interim Order; (ii) the occurrence and continuance of an Event of Default (as defined in the Interim Order) and delivery of a DIP Commitment Termination Notice; (iii) the sale of all or substantially all of Debtor's assets, or (iv) ten days after the entry of an order confirming a plan of reorganization or liquidation of Debtor's estate. |
| Remedies on Event of Default: | Any automatic stay otherwise applicable to the DIP Lender shall be modified so that the DIP Lender may exercise its rights and remedies in accordance with the DIP Financing Agreement after the occurrence and continuance of any Event of Default and at any time thereafter and upon five (5) business days prior written notice of such default, to Debtor, counsel for the Official Creditors Committee, counsel for the Prepetition Lenders and the U.S. Trustee. Immediately following the giving of such notice of default,: (i) Debtor shall continue to deliver and cause the delivery of the proceeds of collateral to the DIP Lender as provided in the DIP Financing Agreement and the Interim Order; (ii) the DIP Lender shall continue to apply such proceeds in accordance with the provisions of the Interim Order and of the DIP Financing Agreement; (iii) Debtor shall have no further right to use any of such proceeds, nor any other Cash Collateral, other than towards the satisfaction of the DIP Obligations; and (iv) any further obligation otherwise imposed on the DIP Lender to provide any loan or advance to Debtor pursuant to the DIP Facility shall be suspended. The giving of notice by the DIP Lender of an Event of Default, Debtor shall be entitled to an emergency hearing before the Court |

Printed on Recycled Paper

| | |
|---|---|
| | solely for the purpose of contesting whether an Event of Default has occurred and is continuing. If Debtor does not contest the right of the DIP Lender to exercise its remedies based upon whether an Event of Default has occurred and is continuing within such time period, or if Debtor does timely contest the occurrence and continuance of an Event of Default and the Court after notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the DIP Lender, shall automatically terminate at the end of such five (5) business day notice period. |
| Credit Against Sale | If Avanti closes the purchase of Debtor's assets contemplated by the Plan, the balance due on the DIP Loan on the date of the closing of that sale shall be a credit against the purchase price to be paid by Avanti. |
| Events of Default: | In addition to other usual and customary events of default for facilities of this type, the following will constitute events of default under the DIP Facility: (i) the filing of a motion by Debtor seeking approval of a disclosure statement and a plan, or the entry of an order confirming a plan, that does not require repayment in full in cash of all DIP Obligations on the effective date (or as soon as practicable thereafter) of such plan; (ii) conversion of Debtor's Chapter 11 case to a case under Chapter 7, or the appointment of a trustee or examiner with expanded powers, (iii) the entry of an order granting relief from stay to any other creditor which could have a material adverse effect on Debtor; (iv) the entry of an order which stays, modifies, or reverses any DIP Financing Order or which otherwise materially adversely affects, as determined by the DIP Lender in its reasonable discretion, the effectiveness of any DIP Financing Order without the |

Printed on Recycled Paper

| | express written consent of the DIP Lender; (v) the failure to obtain entry of the Final Order within 30 days after the date of the entry of the Interim Order; and (vi) the Court shall fail to have entered an order approving the sale of Debtor's assets to Avanti under the Plan on or before April 1, 2010 (or such later date agreed to in writing by the DIP Lender). |
|---|---|

16.     The DIP Facility pursuant to the DIP Financing Agreement are reasonable and fair under the circumstances and, therefore, that the financing provided under the DIP Facility serves the best interests of Debtor, its creditors and its Estate.

## C.     USE OF CASH COLLATERAL OF PREPETITION LENDERS AND PROPOSED ADEQUATE PROTECTION

17.     In connection with the proposed DIP Facility, Debtor requires and requests authorization, pursuant to Sections 363(c)(2) and (e), to use cash receipts and equivalents constituting Cash Collateral of the Prepetition Lenders as contemplated by the DIP Facility and the Interim Order. Debtor needs to use Cash Collateral because all borrowings under the DIP Facility will be secured by and repaid with, among other things, Debtor's cash receipts that may constitute Cash Collateral of the Prepetition Lenders. Additionally, following any repayment of the DIP Obligations in full, Debtor will require access to cash collateral to fund administrative expense obligations contemplated by the Budget pending the conclusion of the Debtor's proposed sale to Avanti under the Plan.

18.     Pursuant to the Interim Order, as adequate protection of for any diminution in value of the interests of the Prepetition Lenders resulting from the use of Cash Collateral, such lenders shall be granted, pursuant to Sections 361, 363(e) and 364(d), the following:

(a)     **Prepetition Replacement Liens**. The Prepetition Lenders shall be granted, subject to the terms and conditions set forth in the Interim Order, additional and replacement security interests and liens in the Collateral (as defined in the Interim Order) (hereinafter, the "Prepetition Replacement Liens"), which shall be junior only to the DIP Protections and the Carve-Out as provided in the Interim Order.

Printed on Recycled Paper

The Prepetition Replacement Liens shall be valid, perfected, enforceable and effective as of the date of entry of the Interim Order without any further action by the parties and without the necessity of the filing of any mortgages or financing statements or the taking of any other actions.

(b) **Prepetition Superpriority Claim**. The Prepetition Lenders shall also be granted allowed superpriority administrative expense claims (the "Prepetition Superpriority Claims") which shall have priority (except with respect to the DIP Protections and the Carve-Out, each of which shall be senior in priority to the Prepetition Superpriority Claims) under Sections 364(c)(1), 503(b), and 507(b) and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b), 1113, and 1114.

19. The proposed use of Cash Collateral and adequate protection described above and set forth in the Interim Order are reasonable and necessary and should be approved by the Court.

### III. BASIS FOR APPROVAL OF THE DIP FACILITY AND THE GRANTING OF SENIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE CLAIMS IN CONNECTION THEREWITH

**A. THE DIP FACILITY 'S NECESSITY TO BRIDGE DEBTOR TO THE AB 1383 FUNDS WARRANTS GRANTING OF SUPERPRIORITY LIENS AND ADMINISTRATIVE CLAIMS TO THE DIP LENDER.**

20. Section 364 authorizes the Court to allow Debtor to obtain post-petition financing from the DIP Lenders as proposed herein. As security for all borrowings under the DIP Facility, Debtor proposes to grant the DIP Lender a superpriority administrative claim, and a first priority lien and security interest in all assets of Debtor, subject to certain permitted liens and claims specified in the Interim Order.

Printed on Recycled Paper

21.     The granting of superpriority administrative claim status is governed by Section 364(c) which provides:

> if the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expenses, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> > (1)     with priority over any and all administrative expenses of the kind specified in section 503(b) and 507(b) of this title;
> >
> > (2)     secured by a lien on property of the estate that is not otherwise subject to a lien;
> >
> > (3)     secured by a junior lien on property of the estate that is subject to a lien

22.     All of Debtor's assets are encumbered by liens granted to the Prepetition Lenders, and Debtor cannot obtain unsecured financing thereby satisfying Section 364(c). Ansel Decl., ¶ 6. Thus, the Court may grant the DIP Lender superpriority administrative claim status as requested by the Motion.

23.     The DIP Facility contemplates priming liens subject to approval under Section 364(d)(1) which provides:

> The court after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
>
> > (A)     the trustee is unable to obtain such credit otherwise; and
> >
> > (B)     there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

24.     The Court should grant the DIP Lenders senior liens and security interests as requested.   First, as discussed above, Section 364(d)(1)(A) is satisfied because Debtor cannot obtain credit sufficient to sustain its day-to-day business operations or to maintain the going concern value of its assets other than by the granting to the DIP Lender a first priority lien and security interest in the Debtor's assets as provided in the Interim Order.  Ansel Decl. ¶ 7.

Printed on Recycled Paper

25.     Debtor negotiated the DIP Financing Agreement at arm's length and has determined, in the exercise of its business judgment and in consultation with its professional advisors, that such financing is the best and most viable financing available under the circumstances. Ansel Decl. ¶ 8. Courts grant a debtor considerable deference in acting in accordance with its business judgment. <u>See</u>, <u>e.g.</u>, <u>Bray v. Shenandoah Fed. Sav. & Loan Ass'n</u> (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986); <u>In re Ames Dep't Stores, Inc.</u> 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

26.     Second, the Motion satisfies Section 364(d)(1)(B) because Debtor proposes to provide adequate protection to the Prepetition Lenders in the manner set forth above.

27.     Thus, for all of the reasons set forth above, the Debtor submits that the circumstances of this case require Debtor to obtain financing pursuant to Sections 364(c) and 364(d). Debtor further submits that the terms of the DIP Facility and the Interim Order are fair, reasonable and necessary under the circumstances, and should be approved in their entirety

**B.    THE COURT SHOULD APPROVE THE PROPOSED USE OF CASH COLLATERAL AND ADEQUATE PROTECTION SHOULD BE APPROVED**

28.     Pursuant to Section 363(c)(2), a debtor in possession may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use ... in accordance with the provisions of this section." In addition, Section 363(e) provides that "on request of an entity that has an interest in property used ... or proposed to be used ... by a [debtor in possession], the court, with or without a hearing, shall prohibit or condition such use ... as is necessary to provide adequate protection of such interests.

29.     Without access to cash collateral, Debtor will not be able to access financing under the DIP Facility, in which event its operations would be brought to a grinding halt, resulting in the loss of the opportunity to obtain AB 1383 Funds thereby causing immediate and irreparable harm to Debtor and its creditors.

Printed on Recycled Paper

1    30.    At the commencement of the case, Debtor valued its accounts receivable at $4.5

2 million.  See Emergency Motion for Use of Cash Collateral at ¶ 9 citing Declaration of Irving

3 Norwood at ¶ 5 [Docket No. 2].   No party objected to this valuation and such valuation has been

4 used without objection in all of the subsequent motions for use of cash collateral without

5 objection.

6    31.    Debtor need only provide adequate protection to insure that the value of a secured

7 creditor's collateral does not diminish over the course of the case. United Sav. Assn. of Tex. v.

8 Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 370-371, 108 S.Ct. 626, 629-630, 98

9 L.Ed.2d 740 (1988).

10    32.    As of January 6, 2010, Debtor had gross accounts receivable of $51,653,985.

11 Based on historical collection rates, Debtor expects to collect $7,668,545 on those accounts

12 receivable.  Through January 6, 2010, Debtor collected $2,140,692 on those accounts receivable,

13 leaving a balance of expected collections of $5,527,853.  Assuming Debtor's patient census and

14 payor mix remains unchanged, Debtor does not see anything that would dramatically alter the

15 accounts balances between now and March 31, 2010 from those on January 6, 2010.  Ansel Decl.,

16 ¶ 9.

17    33.    Those projections do not a DSH payment typically received in early March.  Based

18 on the last payment received at the beginning of January 2010, Debtor expects the DSH next

19 payment could be as much as $802,000.  Ansel Decl., ¶ 10

20    34.    Based on this, it appears that during the period between now and the projected

21 confirmation of the Plan, Debtor's accounts receivables and cash will exceed $6,329,853, an

22 amount greater than the sum of the DIP Facility ($1,000,000) and the amount of Debtor's accounts

23 receivable and cash on the Petition ($4,533,302).  Ansel Decl., ¶ 11

24    35.    Given that the post-petition accretion of Debtor's accounts receivable alone

25 exceeds the amount of the DIP Facility, the Prepetition Lenders remain adequately protected.

26 Pistole v. Mellor (In re Mellor), 734 F.2d 1396, 1400 n. 2 (9th Cir.1984) (noting that "equity

27 cushion" differs from "equity" in that the former is concerned with the value of the property above

28 the amount owed to the creditor with a secured claim and the latter is concerned with the value

Printed on Recycled Paper

<sup></sup>1 above all secured claims against the property).  The $5.55 million proposed sale to Avanti through
2 the Plan further supports this valuation.

3    36.    Likewise the proposed sale to Avanti under the Plan further evidences that the
4 prepetition Lenders will receive a distribution equal to their pre-petition secured claims by the end
5 of March.  See MacPherson Declaration at ¶¶ 3-5, wherein he states that Avanti is highly
6 committed to closing the sale described in the Plan.

7    37.    To adequately protect the interests of the Prepetition Lenders for Debtor's use of
8 Cash Collateral, Debtor proposes to provide such parties with the protections described above and
9 in the Interim Order.   Accordingly, Debtor's request to use Cash Collateral as provided herein and
10 in the Interim Order should be approved.

11 **C.    MODIFICATION OF THE AUTOMATIC STAY**

12    38.    The Interim Order provides that the automatic stay shall be modified to permit
13 Debtor to (i) grant the security interests, liens and superpriority administrative expense claims
14 described above with respect to the DIP Lender, as the case may be, and to perform such acts as
15 may be requested to assure the perfection and priority of such security interests and liens; (ii)
16 permit the DIP Lender and the Prepetition Lenders to exercise, upon the occurrence of and during
17 the continuance of an Event of Default (as defined in the Interim Order), all rights and remedies
18 under the DIP Financing Documents and any prepetition loan documents, subject to providing 5
19 business days' prior written notice of the occurrence of such event of default in the manner
20 specified in the Interim Order; and (iii) implement the Interim Order (and, if granted, the Final
21 Order).

22    39.    Stay modifications of the kind provided in the Interim Order are ordinary and
23 standard features of debtor-in-possession financing facilities, are reasonable and appropriate under
24 the circumstances that exist here, and should be approved

25 **D.    BANKRUPTCY RULE 4001(B) AND (C) AND LOCAL RULE 4001-2**
26 **DISCLOSURE**

27    40.    The provisions described in Bankruptcy Rule 4001(b)(1)(B)(i)-(iv) are set forth at
28 the following sections of the Interim Order:

Printed on Recycled Paper

a.   Name of Each Entity with Interest in Cash Collateral: Interim Order ¶ 7.

b.   Purpose of Use of Cash Collateral: Interim Order ¶ G.

c.   Duration of Use of Cash Collateral: Interim Order ¶ 15.

d.   Liens, Cash Payments, or Other Adequate Protection to be provided to Each Entity with Interest in Cash Collateral: Interim Order ¶ 7.

41.   In addition, the provisions described in Bankruptcy Rule 4001(c)(1)(B)(i)-(xi) are set forth at the following sections of the DIP Financing Agreement or Interim Order, as applicable:

a.   Grant of Priority or a Lien on Property of the Estate: DIP Financing Agreement ¶ 6; Interim Order ¶ 7.

b.   Adequate Protection for a Claim that Arose Before the Commencement of the Case: Interim Order: ¶ 7 (applies to Prepetition Lenders but DIP Lender).

c.   Waiver or Modification of the Automatic Stay: Interim Order ¶¶ 13(a) and

d.   Release, Waiver, or Limitation on Rights under Section 506(c): Interim Order ¶¶ 7(b) and (d) and 12.

e.   Lien Not Granted on Claims Arising under Chapter 5, Except for Section 549: Interim Order ¶7(c).

**E.   PROVISIONS THAT POTENTIALLY IMPLICATE LOCAL BANKRUPTCY RULE 4001-2**

42.   Concurrently herewith, Debtor has filed its Statement Pursuant to Local Bankruptcy Rule 4001-2.

43.   The post-petition financing proposal submitted by the DIP Lenders is the best available under the circumstances and that entry into the DIP Financing Agreement is in the best interests of Debtor and its estate. Substantially all of Debtor's assets are encumbered by the liens and security interests securing Debtor's obligations under the Prepetition Agreement. None of the potential lenders approached by Debtor were willing to extend credit on a junior priority basis.

44.   Indeed, the Prepetition Lenders have repeatedly advised Debtor that they will not make additional funds available on any basis. Weiss Decl. ¶ 2. Thus, absent payment in full of

Printed on Recycled Paper

the Prepetition Credit Obligations, Debtor must prime the liens of the Prepetition Lenders. Even if Debtor had been able to locate a debtor in possession lender willing to provide a priming facility, Debtor would have risked further harm to its business if it had chosen to engage in that sort of expensive, time-consuming and uncertain litigation.

45.     Moreover, as set forth above, Debtor engaged in good-faith negotiations with the DIP Lender prior to determining to enter into the DIP Financing Agreement. Given Debtor's immediate liquidity needs, the DIP Lenders' ability and willingness to act quickly was a significant factor in Debtor's determination.

## IV. REQUEST FOR IMMEDIATE INTERIM APPROVAL OF
## RELIEF REQUESTED HEREIN

46.     Pursuant to Rule 4001(b)(2) and (c)(2), a minimum of fifteen (15) days notice is required before a final hearing on this Motion may commence. Upon request, however, the Court may conduct a preliminary expedited hearing on the Motion to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing. Fed. R. Bankr. P. 4001(c)(2). In accordance with Rules 4001(b) and (c), Debtor respectfully requests that the Court conduct an expedited preliminary hearing on the Motion and authorize Debtor to use Cash Collateral and borrow under the DIP Facility on an interim basis, pending entry of a final order.

47.     Debtor submits that such relief is vital in order to maintain and finance its ongoing operations, preserve the going concern value of Debtor's assets pending the conclusion of the proposed sale process, and, therefore, to prevent immediate and irreparable harm to the Debtor's estate. Debtor further requests that the Court schedule a hearing to consider entry of a Final Order.

48.     As discussed above, it is essential to the continued operation of its business that the Debtor be authorized to obtain emergency financing under the DIP Facility on an interim basis pending the Final Hearing. Funds are urgently needed to meet Debtor's immediate and considerable working capital and other liquidity needs, and to complete the sale contemplated by the Plan. In the absence of emergency access to interim financing, Debtor's sale efforts would be

1 immediately and irreparably jeopardized, resulting in significant harm to the Debtor's estate and

2 creditors.

3     49.     Debtor further submits that because the relief requested in this Motion is necessary

4 to avoid immediate and irreparable harm, Bankruptcy Rule 6003 has been satisfied. Furthermore,

5 to successfully implement the foregoing, Debtor requests a waiver of the notice requirements

6 under Bankruptcy Rule 6004(a) and the ten day stay under Bankruptcy Rule 6004(h).

## V. NOTICE WITH RESPECT TO EMERGENCY INTERIM

## FINANCING REQUEST AND FINAL HEARING

9     50.     Debtor submits that the exigencies of this case and Debtor's immediate need for

10 financing do not permit broad notice of Debtor's request for emergency interim financing pursuant

11 to the Interim Order. Therefore, Debtor has or will give notice of this Motion and the interim

12 relief sought herein, by hand delivery, fax or telephonic notice to (a) the Office of the United

13 States Trustee; (b) CHHP, Inc., Cardinal Health; and Hunting Park Doctors Group, LLC (the

14 "Prepetition Lenders"); (c) Avanti; (d) counsel for the Official Creditors Committee,; (e) all

15 persons requesting notice under Rule 2002 and all known parties holding secured claims

16 (collectively, the "Initial Notice Parties").

17     51.     In light of the nature of the relief requested, Debtor submits that no other or further

18 notice need be provided.

19     52.     Debtor further requests that the Court schedule the Final Hearing and authorize

20 them to mail copies of the signed Interim Order, which fixes the time, date and manner for the

21 filing of objections, to the Initial Notice Parties and (i) any party that has filed prior to such date a

22 request for notices with this Court; (ii) counsel for any official committee(s), if any; and (iii) the

23 Internal Revenue Service.

24     53.     No previous request for the relief sought herein has been made by Debtor to this or

25 any other Court.

26     **WHEREFORE**, Debtor respectfully requests that the Court (i) enter the Interim Order

27 authorizing, inter alia, Debtor to obtain financing pursuant to the DIP Facility on an emergency

28 interim basis through the conclusion of the Final Hearing on the terms set forth herein and in the

Printed on Recycled Paper

DIP Financing Agreement, (ii) enter a Final Order authorizing the Debtor to obtain financing under the DIP Facility on a permanent basis on the terms set forth herein and in the DIP Financing Agreement, (iii) grant all related relief requested in this Motion, and (iv) grant the Debtor such other or further relief as may be just and proper.

Dated: January 27, 2010         WEISS & SPEES, LLP


By: /s/ *Michael H. Weiss*
        Michael H. Weiss
        Attorneys for Debtor and Debtor-in-Possession

Printed on Recycled Paper

# DECLARATION OF MICHAEL H. WEISS

I, MICHAEL H. WEISS, declare as follows:

1.      I am a partner in the law firm of Weiss & Spees, LLP, attorneys for Karykeion, Inc., debtor and debtor in possession.  I submit this Supplemental Declaration in support of the Motion for Orders (A) Authorizing Debtor To (I) Obtain Post-Petition Financing And Granting Security Interests and Superpriority Administrative Expense Status Pursuant To 11 U.S.C. § 364; (II) Use Cash Collateral Pursuant To 11 U.S.C. § 363; (III) To Provide Adequate Protection Pursuant To 11 U.S.C. §§ 361; And (B) Scheduling A Final Hearing And Establishing Related Notice Requirements (the "Motion").   All capitalized terms have the same meaning ascribed to them in the accompanying Motion.  I have personal knowledge of the facts stated herein and, if called upon to do so, would and could competently testify thereto under oath in a court of law.

2.      On several occasions since the commencement of this case, I have spoken with Ivan Kallick, Esquire, counsel for secured creditor CHHP, Inc. and asked if his client would provide DIP financing to Debtor.  Mr. Kallick advised that his client would not do so.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Application was executed on this 28th day of January 2010 at Los Angeles, California.

/s/    *Michael H. Weiss*
MICHAEL H. WEISS

Printed on Recycled Paper

# DECLARATION OF DANIEL J. ANSEL

I, DANIEL J. ANSEL, declare as follows:

1.      I am the Chief Reorganization Officer and Chief Executive Officer of Karykeion, Inc., Debtor and Debtor in Possession.  I submit this Supplemental Declaration in support of the Motion for Orders (A) Authorizing Debtor To (I) Obtain Post-Petition Financing And Granting Security Interests and Superpriority Administrative Expense Status Pursuant To 11 U.S.C. § 364; (II) Use Cash Collateral Pursuant To 11 U.S.C. § 363; (III) To Provide Adequate Protection Pursuant To 11 U.S.C. §§ 361; And (B) Scheduling A Final Hearing And Establishing Related Notice Requirements (the "Motion").  All capitalized terms have the same meaning ascribed to them in the accompanying Motion.  I have personal knowledge of the facts stated herein and, if called upon to do so, would and could competently testify thereto under oath in a court of law.

2.      Debtor can demonstrate that it can provide adequate protection to the Prepetition Lenders in that the value of their collateral (primarily accounts receivable) have accreted by an amount approximately equal to the amount of the proposed facility since the commencement of this case.

3.      Debtor's operations depend upon uninterrupted access to necessary working capital.  Therefore, immediate access to the DIP Facility will prevent irreparable harm to Debtor's estate.  The DIP Facility also is necessary to provide assurance to employees, utilities and other parties that they will be paid on a timely basis for post-petition services.  Without the DIP Facility, Debtor's day-to-day operations would come to a halt, a result that would be devastating as the Debtor's attempts to maximize the value of its assets through the pursuit of a sale process to Avanti under the Plan.

4.      Other than the DIP Facility, there are no viable financing alternatives available to Debtor under the circumstances.

Printed on Recycled Paper

5. Debtor cannot obtain alternative post-petition financing through credit allowable as an administrative expense, or credit secured by liens on Debtor's assets junior to the liens of the Prepetition Lenders.

6. All of Debtor's assets are encumbered by liens granted to the Prepetition Lenders, and Debtor cannot obtain unsecured financing thereby satisfying Section 364(c).

7. The Court should grant the DIP Lenders senior liens and security interests as requested. First, as discussed above, Section 364(d)(1)(A) is satisfied because Debtor cannot obtain credit sufficient to sustain its day-to-day business operations or to maintain the going concern value of its assets other than by the granting to the DIP Lender a first priority lien and security interest in the Debtor's assets as provided in the Interim Order.

8. Debtor negotiated the DIP Financing Agreement at arm's length and has determined, in the exercise of its business judgment and in consultation with its professional advisors, that such financing is the best and most viable financing available under the circumstances.

9. As of January 6, 2010, Debtor had gross accounts receivable of $51,653,985. Based on historical collection rates, I expect Debtor to collect $7,668,545 on those accounts receivable. Through January 6, 2010, Debtor collected $2,140,692 on those accounts receivable, leaving a balance of expected collections of $5,527,853. Assuming Debtor's patient census and payor mix remains unchanged, I do not see anything that would dramatically alter the account balances between now and March 31, 2010 from those on January 6, 2010.

10. Our do not include a DSH payment. However, such payments are typically received at the beginning of March and based on the last payment received at the beginning of January 2010 that next payment could be as much as $802,000.

11. Based on this, it appears that during the period between now and the projected confirmation of the Plan, Debtor's accounts receivables and cash will exceed $6,329,853, a sum greater than the sum of the DIP Facility ($1,000,000) and the amount of Debtor's accounts receivable and cash on the Petition ($4,533,302).

Printed on Recycled Paper

1    I declare under penalty of perjury under the laws of the United States that the

2   foregoing is true and correct and that this Application was executed on this 28th day of

3   January 2010, at Huntington Park, California.

4                                    /s/    _Daniel J. Ansel_

5                                    DANIEL J. ANSEL

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Printed on Recycled Paper

# DECLARATION OF JAMES MacPHERSON

I, James MacPherson, declare as follows:

1.      I am a principal and a Manager of Avanti Health System, LLC ("Avanti"). I have been actively involved in Avanti's attempts to acquire Community Hospital since the beginning. By virtue of my continued role in the acquisition, and in the bridge financing, I have firsthand knowledge of the facts set forth herein and if called to testify, I would and could testify competently thereto.

2.      Avanti began negotiations with Debtor months ago to purchase Community Hospital. We have persevered in our determination to bring an acquisition transaction to fruition. There were obstacles that the Debtor had including settlements with other parties, but our interest remained.

3.      In January, Debtor came to us with a problem. It could not continue operations until a plan could be confirmed, unless Avanti would loan it $1 million in bridge financing. It couldn't get the financing elsewhere and it couldn't survive until a sale to Avanti could be authorized by the Bankruptcy Court and be confirmed.

4.      Avanti is not in the business of making loans. Nevertheless, in order to be able to complete this acquisition, Avanti agreed to undertake bridge financing. Given Debtor's circumstances, it was, and is, imperative to us that we obtain senior status in our security interest in substantially all of Debtor's property. Hopefully, the purchase will close on the schedule contemplated in the Bankruptcy Court scheduling, and our loan will be credited as part of the acquisition cost.

5.      Avanti is committed to making this acquisition happen. The consent of Siemens is no longer a condition to the bridge loan financing. Avanti has caused its attorneys to draft the pertinent

1  documents. I am highly confident that Avanti will be able to close the purchase on the timetable

2  anticipated by Debtor.

3       I declare under penalty of perjury under the laws of California and the United States that the

4  foregoing is true and correct and that this declaration was executed at Manhattan Beach, California

5  on January 27, 2010.

James MacPherson

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

1925 Century Park East, Suite 650, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as **EMERGENCY MOTION OF DEBTOR FOR ORDERS (A) AUTHORIZING DEBTOR TO (i) OBTAIN POST-PETITION FINANCING AND GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. § 364; (ii) USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (iii) TO PROVIDE ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361; AND (B) SCHEDULING A FINAL HEARING AND ESTABLISHING RELATED NOTICE REQUIREMENTS; DECLARATIONS OF MICHAEL H. WEISS; DANIEL J. ANSEL AND JAMES MACPHERSON; EXHIBITS 1, 2 AND 3** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On January 20, 2010 checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

### See attached Service List

II. **SERVED BY U. S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On January 28, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
**U.S. Mail**

### See attached Service List

III. **SERVED BY EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 28, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

### See attached Service List

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 28, 2010 | Laura J. Meltzer | /S/ |
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive e-mail notices for this case.

- Simon Aron    saron@wrslawyers.com
- Theresa W Bangert    tbangert@sheppardmullin.com
- J Scott Bovitz    bovitz@bovitz-spitzer.com
- Katherine Bunker    kate.bunker@usdoj.gov
- Young K Chang    bklaw3@yahoo.com
- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
- Jeffrey K Garfinkle    bkgroup@buchalter.com, jgarfinkle@buchalter.com
- Matthew A Gold    courts@argopartners.net
- Michael I. Gottfried    mgottfried@lblawllp.com, aerskine@lblawllp.com
- Mark D Houle    mark.houle@pillsburylaw.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- George C Lazar    glazar@foxjohns.com
- Samuel R Maizel    smaizel@pszjlaw.com, smaizel@pszjlaw.com
- John B Marcin    jbm@marcin.com
- Craig G Margulies    cmargulies@lm-lawyers.com
- Elissa Miller    emiller@sulmeyerlaw.com
- Alan I Nahmias    anahmias@mirmanbubman.com, jdale@mirmanbubman.com
- David L. Neale    dln@lnbrb.com
- Christopher R Nelson    cnelson@erlaw.com
- Scott H Noskin    snoskin@mirmanbubman.com
- Robert N Phan    rphan@garciaphan.com
- Steven G Polard    spolard@perkinscoie.com
- Andres F Quintana    andres@qlglaw.com
- Christian L Raisner    bankruptcycourtnotices@unioncounsel.net, craisner@unioncounsel.net
- Holly Roark    holly@roarklawoffices.com
- Scott A Schiff    sas@soukup-schiff.com
- Nathan A Schultz    schultzn@gtlaw.com
- Stephanie M Seidl    sseidl@sheppardmullin.com
- Benjamin Seigel    bseigel@buchalter.com, IFS_filing@buchalter.com
- Adam M Starr    starra@gtlaw.com
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Annie Verdries    verdries@lbbslaw.com
- Ryan T Waggoner    rwaggoner@erlaw.com
- Michael H Weiss    mweiss@fms-law.com, lm@weissandspees.com;jb@weissandspees.com
- Michael H Weiss    mw@weissandspees.com, lm@weissandspees.com;jb@weissandspees.com

**SERVICE LIST**

| SERVED ELECTRONICALLY | SERVED BY U.S. MAIL |
|---|---|
| Chambers_mthighe@cacb.uscourts.gov<br>Kate.Bunker@USDOJ.gov<br>smaizel@pszjlaw.com<br>mlane@pszjlaw.com<br>dansel@cmhhp.com<br>clinica1@aol.com<br>jgarfinkle@buchalter.com<br>ikallick@manatt.com<br>jsostrin@manatt.com<br>mark.houle@pillsburylaw.com<br>RB@LNBRB.COM<br>hjnourmand@nourmandlaw.com<br>emiller@sulmeyerlaw.com<br>sas@soukup-schiff.com<br>shabel@labusinesslawyer.com<br>anahmias@mirmanbubman.com<br>alan@mirmanbubman.com<br>cmargulies@lm-lawyers.com<br>cnelson@erlaw.com<br>bill.freeman@pillsburylaw.com<br>SPolard@perkinscoie.com<br>DLN@lnbrb.com<br>SHuskey@ERLaw.com<br>glassmanp@gtlaw.com<br>Heide2727@aol.com<br>DJett@EBGlaw.com<br>fjg@greenblattlaw.com<br>bovitz@bovitz-spitzer.com<br>bovitz@bovitz.com<br>mboigues@unioncounsel.net<br>mberman@CalNurses.org | Karykeion Inc<br>12134 Victory Boulevard<br>North Hollywood, CA 91606<br><br>Eric Stone, REHS, HFE III<br>Supervisor<br>County of Los Angeles<br>Health Facilities Inspection Div.<br>L.A. Department of Health Services<br>5555 Ferguson Dr., Ste. 320<br>Commerce, CA 90022<br><br>Alan Kahn, C.P.A.<br>Crowe Horwath<br>15233 Ventura Blvd., Ninth Floor<br>Sherman Oaks, CA 91403<br><br>Advanced Medical Analysis LLC<br>1941 Walker Avenue<br>Monrovia, CA 91016<br><br>Advocate Solutions RX<br>24042 Network Place<br>Chicago, IL 60673-1240<br><br>AT&T / SBC Pacific Bell<br>PO Box 8104<br>Aurora, IL 60507-8104<br><br>AT&T<br>PO Box 78225<br>Phoenix, AZ 85062-8225<br><br>AT&T Long Distance<br>PO Box 660688<br>Dallas, TX 75266-0688<br><br>Bridgeport Medical Management<br>1442 E LINCOLN AVE., SUITE 352<br>ORANGE, CA 92865 |

**SERVICE LIST**

BIOMERIEUX
100 RODOLPHE ST.
DURHAM, NC 27712

Jonathan Neil Associates, Inc.
18321 Ventura Blvd., Ste 1000
Tarzana, CA 91356

Epstein Turner & Song
777 Figueroa Street
Suite4950
Los Angeles, CA 90017

Equicare Portfolio, LLC
5400 Orange Ave., Suite 200
Cypress, CA 90630

The Fulcrum Group
3998 Inland Empire Blvd. #300
Ontario, CA 91764

Genetic Disease Branch DHS
2163 Meeker Ave. Box 186
Richmond, CA 94804

Huntington Park Medical Group
16030 Ventura Blvd
Suite 200
Encino, CA 91436

Huntington Park Doctors Group, LLC
9533 Sawyer Street
Los Angeles, CA 90035

Leasing Associates Of Barrington
33 West Higgins Road, Suite 1030
South Barrington, IL 60010

RX RELIEF
7535 Palm Ave. Suite 101
Fresno, CA 93711-1393

SC EDISON
PO BOX 600
ROSEMEAD CA 91771

**SERVICE LIST**

SC EDISON
ATTN: Karen Dickson
P.O. Box 9004
San Dimas, CA 91773

Western Acute Care Physician
456 Panorama Dr.
Laguna Beach, CA 92651

White Memorial Medical Center
1720 Cesar E Chavez Ave.
Los Angeles, CA 90033

X-Prt Medical Imaging
4335 Van Nuys Ave., #367
Sherman Oaks, CA 91403

Business Loan Conduit No. 2, LLC
801 Nicollet Mall Suite 1700W
Minneapolis, MN 55402

IRS
300 N. Los Angeles Street
Mail Stop 5117
Los Angeles, CA 90012

Boston Scientific Corp
PO Box 512638
Los Angeles, CA 90051

Boston Scientific Corp
10880 Wilshire Blvd., #2240
Los Angeles, CA 90024

Employment Development Department
P.O. Box 826880
Sacramento, CA 94280

Tyco Healthcare
Pinnacle Financial Group (Rl0471)
7825 Washington Ave South Ste 310
Minneapolis, MN 55439

NEC Financial Services, LLC

**SERVICE LIST**

|  | Therese Calabria<br>Customer Care Representative<br>1 Park 80 Plaza West 3rd Floor<br>Saddle Brook, NJ 07663-5806<br><br>LaSalle Bank National Assoc.<br>135 South LaSalle Street<br>Chicago, IL 60603<br><br>Key Equipment Finance, Inc.<br>1000 McCaslin Blvd.<br>Superior, CO 80027<br><br>Corporate Express<br>10880 Wilshire Blvd., Ste. 2240<br>Los Angeles, CA 90024<br>Affordable Properties<br>11810 Glen Wessex Court<br>Tampa, FL 33626<br><br>Crothall Healthcare Inc<br>955 Chesterbrook Blvd., Ste. 300<br>Wayne, PA 19087<br><br>Attorneys For Professional Indexes And Files<br>Jon O. Blanda, Esq.<br>Collection At Law, Inc.<br>31200 Via Colinas, Ste. 101<br>Westlake Village, CA 91362<br><br>Attorneys For Manuel Nunez And Manuel Aguilar, Dba,<br>M&M Diagnostic Staffing<br>Robert David Ciaccio, Esq.<br>Law Offices of Robert David Ciaccio<br>3424 Carson Street, Ste. 500<br>Torrance, CA 90503<br><br>Attorney For Reliable Health Care Services, Inc.<br>Brendan P. Brewer, Esq.<br>Law Office of Brendan P. Brewer<br>950 Northgate Drive, Suite 202<br>San Rafael, CA 94903<br><br>Attorneys For Tempus, Llc, Dba Emerald Health Services |
|---|---|

SERVICE LIST

Simon Aron, Esq.
Wolf, Rifkin, Shapiro & Schulman, LLP
11400 West Olympic Blvd., 9th Flr.
Los Angeles, CA 90064-1565

Attorneys For Pacificare Of California, Inc.
Karl E. Block, Esq.
Loeb & Loeb
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067-4120

Constance R. Doyle
Patient Care Ombudsman
21509 Anza Ave.
Torrance, CA 90503

CBC DIAGNOSIS
Tim Rimmer
418 Ogle Circle
Costa Mesa, CA  92627

Johanna A. Sanchez, Esq.
Lewis Brisbois Bisgaard & Smith LLP
221 N. Figueroa Street, Ste. 1200
Los Angles, CA 90012-2601

Musick, Peeler & Garrett LLP
Stuart Rudnick, Esq.
One Wilshire Blvd., Ste. 2000
Los Angeles, CA 90017

Michael R. Stewart, Esq.
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901

Eugene S Alkana
Law Offices of Eugene Alkana
131 N El Molino Ave #310
Pasadena, CA 91101

Michael S Braun
Law Office of Michael S Braun
3820 Del Amo Blvd Ste 311

**SERVICE LIST**

|  | Torrance, CA 90503 |
|  | |
|  | Deborah De Niro<br>12400 Wilshire Blvd Ste 1265<br>Los Angeles, CA 90025 |
|  | |
|  | Martin F Goldman<br>10880 Wilshire Blvd Ste 2240<br>Ste 2240<br>Los Angeles, CA 90024-4101 |
|  | |
|  | Paul H. Levine<br>Law Offices of Henry N. Jannol<br>10350 Santa Monica Blvd., Suite 350<br>Los Angeles, CA 90025 |
|  | |
|  | Platte River Insurance Company<br>c/o Jomax Recovery Services<br>20325 N 51St Ave Ste 134<br>Glendale, AZ 85308 |
|  | |
|  | Primeshares<br>261 Fifth Avenue 22nd Flr<br>ATTN: RVS<br>New York, NY 10016 |