**WEISS & SPEES, LLP**
Michael H. Weiss (State Bar No. 107481)
Sherry D. Spees (State Bar No. 128392)
Laura J. Meltzer (State Bar No. 151889)
1925 Century Park East, Suite 650
Los Angeles, California 90064
Telephone: (424) 245-3100
Facsimile: (424) 245-3199
mw@weissandspees.com

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No.: 01:08-bk-17254-MT |
| KARYKEION, Inc., a California corporation, DBA COMMUNITY AND MISSION HOSPITAL OF HUNTINGTON PARK, DBA PHYSICIANS SUPER CENTERS, INC., | Chapter 11 |
| | **DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION DATED AS OF FEBRUARY 19, 2010** |
| Debtor. | Date: March 18, 2010<br>Time: 11:00 a.m.<br>Place: Courtroom 302 |

Printed on Recycled Paper

s:\karykeion\plan and disclosure
statement\2nd amended plan & discl
statement\second amended
plan_2.19.10.clean.docx

1

# TABLE OF CONTENTS

INTRODUCTION................................................................................................................ 2

I.   TREATMENT OF CLAIMS AND INTERESTS................................................................ 4

   A.   Summary and Classification of Claims and Interests. ........................................ 4

   B.   Allowance and Treatment of Unclassified Claims (Administrative Claims and Priority Tax Claims). ........................................................................................................ 4

      1.   Administrative Claims. ........................................................................... 4

   C.   Classification and Treatment of Classified Claims and Interests. ..................... 7

      3.   Class "A" ................................................................................................ 7

      4.   Class "B" ................................................................................................ 8

      5.   Class "C" ................................................................................................ 9

      6.   Class "D" .............................................................................................. 10

      7.   Class "E-1" ........................................................................................... 10

      8.   Class "E-2" ........................................................................................... 11

      9.   Class "F-1" ........................................................................................... 11

      10.   Class "F-2" ........................................................................................... 12

      11.   Class "G" ............................................................................................. 12

      12.   Class "H" ............................................................................................. 13

      13.   Class "I" .............................................................................................. 14

      14.   Class "J" .............................................................................................. 14

      15.   Class "K" **[DELIBERATELY OMITTED]** ............................................... 14

      16.   Class "L" .............................................................................................. 14

II.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES................ 15

   A.   Assumption of Executory Contracts and Unexpired Leases. ........................... 15

      1.   Assumption of Agreements................................................................... 15

      2.   Cure Payments ..................................................................................... 15

      3.   Objections to Assumption.................................................................... 15

Printed on Recycled Paper

| | | | |
|---|---|---|---|
| | 4. | Resolution of Claims Relating to Assumed Agreements | 16 |
| | 1. | Rejected Agreements | 16 |
| | 2. | Bar Date for Rejection Damage Claims | 16 |
| III. | | MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN | 17 |
| | 1. | Plan Funding | 17 |
| | 3. | Creditor Trust and Disbursing Agent | 18 |
| | 4. | Payments on or after the Effective Date | 18 |
| | 1. | The Avanti Reserve | 19 |
| | 2. | Creditor Trust Administrative Reserve | 20 |
| | 2. | Funding of the Creditor Trust. | 21 |
| | 3. | Section 1123(b)(3(B) Representative | 21 |
| | 4. | Avoidance Actions | 22 |
| | 5. | Claim Objections | 22 |
| | 6. | Powers and Duties | 22 |
| | 7. | Termination of the Creditor Trust | 23 |
| | 8. | Additional Provisions of the Creditor Trust Agreement | 23 |
| D. | | Revesting of Assets. | 24 |
| | 1. | Creditor Trust | 24 |
| | 2. | Avanti | 24 |
| E. | | Preservation/Revesting of Rights of Action. | 26 |
| F. | | Bar Date for Objections to Claims | 26 |
| G. | | Distribution of Property Under the Plan | 26 |
| | 1. | Manner of Cash Payments Under the Plan | 26 |
| | 2. | No *de minimis* Distributions | 26 |
| | 3. | No Distribution With Respect to Disputed Claims | 26 |
| | 4. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 27 |
| H. | | Estimation of Disputed Claims for Distribution Purposes | 28 |
| I. | | Cancellation of Interests | 28 |

| | | |
|---|---|---|
| J. | Full Satisfaction | 28 |
| K. | Compliance with Tax Requirements | 28 |
| L. | Setoff, Recoupment and Other Rights | 28 |
| M. | Conditions to Effectiveness | 29 |
| 1. | Conditions | 29 |
| 2. | Waiver of Conditions | 29 |

**IV.   OTHER PLAN PROVISIONS** ... 30

| | | |
|---|---|---|
| A. | Exculpation:  No Liability for Solicitation or Prosecution of Confirmation | 30 |
| B. | Exemption from Certain Transfer Taxes | 30 |
| C. | Nonapplicability of Local Rule 3020-1(b) | 30 |
| D. | Successors and Assigns | 30 |
| E. | Saturday, Sunday or Legal Holiday | 30 |
| I. | Headings | 31 |
| J. | Severability of Plan Provisions | 31 |
| K. | Governing Law | 31 |

**V.   EFFECT OF CONFIRMATION OF THE PLAN** ... 31

| | | |
|---|---|---|
| A. | Discharge and Injunction | 31 |
| B. | Payment of U.S. Trustee Fees | 33 |
| C. | Retention of Jurisdiction | 33 |

**VI.   RECOMMENDATION AND CONCLUSION** ... 36

**DEFINITIONS AND RULES OF CONSTRUCTION** ... 37

| | | |
|---|---|---|
| A. | DEFINITIONS. | 37 |
| B. | RULES OF CONSTRUCTION | 42 |

## **INTRODUCTION**

Karykeion, Inc., a California corporation, is the debtor in the above captioned Chapter 11 bankruptcy case. On September 22, 2008, Karykeion, Inc. ("Debtor") commenced this bankruptcy case by filing its voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. §§ 101 *et seq.* All references to either "Section" refer to Sections of the Code, unless otherwise noted. All references to "Estate" refer to the bankruptcy estate of Debtor created by Section 541(a). All references to "Rule" refer to Federal Bankruptcy Rules of Procedure. All references to "Court" refer to the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division. Unless otherwise noted capitalized terms have the same meaning as given in the Definitions set forth at the end of the Plan.

This document is Debtor's Second Amended Chapter 11 Plan of Liquidation (the "Plan"), Dated as of February 19, 2010. Sent to you in the same envelope as this document is Debtor's Disclosure Statement Describing Debtor's Second Amended Plan of Liquidation dated as of February 19, 2010 (the "Disclosure Statement") that the Court has approved and which Debtor has provided to help you understand the Plan. Section 1129(a)(11) allows Debtor to propose a plan of liquidation, i.e., a plan to liquidate by selling assets of the Estate.

Debtor proposes to sell the substantially all of the Estate's operating to Avanti Health Systems, LLC or its designee ("Avanti") for $5,250,000.00, subject to certain adjustments, plus Avanti's assumption of up to $300,000 in liabilities ("Sale"). The Estate's remaining assets -- primarily its rights to litigation recoveries, cash on hand as of the Effective Date and approximately $15,400,000 to which it is entitled pursuant to the Medi-Cal Hospital Provider Rate Stabilization Act (California Welfare & Institutions Code §§ 14167.1-14167.17) ("AB 1383") -- will be placed into the "Trust for the benefit of the Creditors of Karykeion, Inc." (the "Creditor Trust").[1] The Creditor Trust will then distribute its assets to creditors according to the terms of the Plan and the Code. The trustee of the Creditor Trust will be Tom Paccioretti of Broadway

---

[1]   Debtor will not transfer any real property associated with the Mission Hospital campus located at 3111 E. Florence Ave or the Medical Office Building located at 3100 E. Florence Avenue in Huntington Park to the Creditor Trust as, these properties are subject to a settlement with CIG as set forth below in Part II.E.c.1.i.

Advisors, LLC (the "Liquidating Trustee").

Printed on Recycled Paper

# I. TREATMENT OF CLAIMS AND INTERESTS

## A. SUMMARY AND CLASSIFICATION OF CLAIMS AND INTERESTS.

This section of the Plan classifies claims and interests -- except for administrative claims and priority tax claims, which are not classified -- for all purposes, including voting, confirmation, and distribution under the Plan. A claim or interest is classified in a particular class only to the extent that the claim or interest falls within the class description. To the extent that part of the claim or interest falls within a different class description, the claim or interest is classified in that different class. In some instances, certain creditors will have claims in more than one class. Such creditors may vote to assume or reject the Plan by casting votes in each class to which a creditor belongs.

The following table summarizes the classes of claims and interests under the Plan:

| Class | Description | Impaired | Voting Status |
|---|---|---|---|
| **SECURED CLAIMS** | | | |
| A | CHHP, Inc – Secured Claim | No | No |
| B | Mulroe et al – secured Claim | Yes | No |
| C | Hunting Park Doctors Group, LLC | Yes | Yes |
| D | Cardinal Health | Yes | Yes |
| E-1 | Sterling Bank (Mission Hospital) | Yes | Yes |
| E-2 | Sterling Bank (Medical Office Building) | Yes | Yes |
| F-1 | Business Loan Conduit No. 2 (Mission Hospital) | Yes | Yes |
| F-2 | Business Loan Conduit No. 2 (Medical Office Building) | Yes | Yes |
| G | Centers for Medicare and Medicaid Services (recoupment) | No | No |
| **UNSECURED CLAIMS** | | | |
| H | Priority Pre-Petition Wage Claims | No | No |
| I | Priority Pre-Petition Benefit Claims | No | No |
| J | General Unsecured Claims | Yes | Yes |
| K | Deliberately omitted | *** | *** |
| **INTERESTS** | | | |
| L | Rubin Trust -- Shareholder | Yes | No |

## B. ALLOWANCE AND TREATMENT OF UNCLASSIFIED CLAIMS (ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS).

1. Administrative Claims.

   a. Allowance of Administrative Claims.

Printed on Recycled Paper

(i)  Allowance of Ordinary Course Administrative Claims: An entity holding an administrative claim incurred in the ordinary course of Debtor's business may, but need not, file a motion or request for payment of its claim.  Debtor or any other party in interest may file an objection to an ordinary course administrative claim in their discretion.  Unless a party in interest objects to an ordinary course administrative claim within 30 days after the filing of such claim, that claim will be allowed in accordance with the terms and conditions of the particular transaction that gave rise to the claim. These claims include any claims of employees for wages and benefits that accrued after Debtor filed is petition for relief on September 22, 2008.

(ii)  Allowance of Claims of Professionals: Unless otherwise expressly provided in the Plan, claims of professionals retained under Sections 327-330 will be allowed only if: (i) on or before 45 days after the Confirmation Date, the professional files with the Court a final fee application requesting allowance of the fees and serves the application upon counsel for Debtor, the Liquidating Trustee, counsel for the Official Committee of Creditors Holding Unsecured Claims (the "OCC") and the Office of the United States Trustee (the "OUST"); and (ii) the Court determines it is an allowed claim. Any party in interest may file an objection to such application or motion within the time provided by the Bankruptcy Rules or within any other period that the Court establishes. Professionals that fail to file timely and serve a fee application will be forever barred from asserting those claims against Debtor, the Estate, the Creditor Trust and their respective property.

(iii)  Allowance of Cure Payments:  Cure Payments shall be allowed in accordance with the procedures set forth in Section II.A.2 hereof.

(iv)  Allowance of Non-Ordinary Course Administrative Claims: Unless otherwise expressly provided in the Plan, administrative claims not incurred in the ordinary course of Debtor's business will be allowed only if: (i) on or before the date set by the Court at the Confirmation Hearing, the entity holding such a claim files a motion or other application requesting allowance of that claim with the Court and serves the motion on Debtor, the Creditor Trust and the U.S. Trustee; and (ii) the Court determines that it is an allowed administrative claim. Debtor or any other party in interest may file an objection to such motion or application in

Printed on Recycled Paper

accordance with the local rules of the Court.   Entities holding administrative claims that did not arise in the ordinary course of Debtor's business who fail to timely file and serve a request for payment will be forever barred from asserting those claims against Debtor, the Estate, the Creditor Trust and their respective property.

**PLEASE NOTE:**

- **At the Confirmation Hearing, the Court will set an extended deadline for any administrative claim to be filed by any employee with respect to any grievance that arose from Debtor's acts after September 22, 2008; and**

- **Nothing in this provision operates to modify or extend the March 1, 2010 deadline to file administrative expense claims as specified in Order Setting Administrative Claims Bar Date entered on January 21, 2010 [Docket No. 733].**

b.      Treatment of Administrative Claims.

(i)      Treatment of Allowed Ordinary Course Administrative Claims: Unless otherwise agreed, allowed administrative claims incurred in the ordinary course of Debtor's business will be paid by Debtor in accordance with the terms and conditions of the particular transaction that gave rise to the claim, but in no event any later than 10 days after the Effective Date.

(ii)      Treatment of Professional Fee Claims: Unless otherwise agreed, an allowed professional fee claim will be paid by the Creditor Trust within 10 days after the date on which the Court allows that claim or the Effective Date, whichever is later.

(iii)      Treatment of Cure Payments: Cure Payments will be made to the non-Debtor parties to the executory contracts or unexpired leases in accordance with Section III.A.2 of the Plan.

(iv)      Treatment of U.S. Trustee Fees Under 28 U.S.C. § 1930: The Creditor Trust will pay to the U.S. Trustee all fees due and owing under 28 U.S.C. § 1930 in cash 10 days after the Effective Date.

Printed on Recycled Paper

(v)    Treatment of Non-Ordinary Course Administrative Claims: Unless the entity holding an administrative claim that did not arise out of the ordinary course of Debtor's business allowed by the Court agrees to different treatment, Debtor will pay that entity cash in the full amount of that allowed administrative claim, without interest, on the later of: (i) 10 days after the Effective Date, or (ii) 10 days after the date on which the Court determines such claim is an allowed claim.

c.    Termination of Patient Care Ombudsman.  Constance Doyle, the duly appointed  patient care ombudsman, shall cease her duties when Avanti takes over operations of the Debtor as Debtor will no longer have any responsibility for patient care.   Ms. Doyle shall file her final report the Court within 45 days after her duties terminate.

2.    Priority Tax Claims.  Unless otherwise agreed, the Liquidating Trustee will pay the amount of any allowed priority tax claim on the later of the Effective Date or at such time as the Liquidating Trustee has sufficient funds to pay such claims, but in no event later than March 31, 2011.  Priority tax claims shall bear interest at a rate of 6% from the Effective Date until paid in full.

**C.    CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS.**

3.    Class "A"

a.    Classification:  Class "A" consists of the allowed secured claim of CHHP, Inc. ("CHHP").

b.    Treatment: Class "A" is unimpaired under the Plan, and the legal, equitable, and contractual rights of the holder of the Allowed Class "A" Claim is unaltered by the Plan, except as allowed by Section 1124(2). On the Confirmation Date, Debtor will pay Class "A" the sum of $2,522,562.61 which is composed of (i) principal of $1,868,087.50; (ii) accrued interest at the contract rate (Prime Rate[2] + 5%) from May 1,2006 through March 31, 2010 ($805,911.11); (iii) IT services claim ($501,064.00); and (iv) estimated attorneys' fees of $150,000, less adequate protection payments of $802,500.  If the Confirmation Date is after March 31, 2010, Debtor will

---

[2]    The term "Prime Rate" refers to the interest rate banks charge to large corporations for short-term loans as published each business day in the Wall Street Journal.

Printed on Recycled Paper

1  pay additional interest of $181.62 per day based upon the Prime Rate being 3.5%. If the

2  Confirmation Date is before March 31, 2010, Debtor's payment shall be reduced by $181.62 per

3  day based upon the Prime Rate being 3.5%. The per diem interest rate will be adjusted to reflect

4  any changes in the Prime Rate.

5      Debtor will reserve an additional $450,000 to pay CHHP's fees. If CHHP seeks

6  additional such legal fees, it must file an application to the Court for these additional fees no more

7  than 20 days after the Confirmation Date and serve same upon Debtor, the OUST and counsel for

8  the OCC. If such additional fees are awarded, they will be paid 10 days after the Court enters any

9  such award from said reserve. Failure to make a timely application for such fees shall forever bar

10  CHHP from seeking such fees.

11      No later than twenty-one (21) days prior to the Confirmation Hearing, Debtor shall

12  file with the Court a schedule setting forth the proposed amount necessary to pay the Class "A"

13  Claim in full. The Confirmation Order shall constitute a conclusive determination as to amount of

14  the allowed Class "A" Claim to be paid on the Effective Date.

15      On the Confirmation Date, conditioned upon the receipt of the amount determined

16  by the Court to be necessary to pay the Class "A" claim in full, CHHP shall release all of its liens

17  against property of the Estate. Further, the Confirmation Order shall provide that all such liens are

18  released.

19      c.    Voting: Class "A" cannot vote because it is unimpaired and therefore

20  deemed to have accepted the Plan under Section 1126(f).

21      4.    Class "B"

22      a.    Classification: Class "B" consists of the claims of John Mulroe and

23  Affordable Properties, LLC (collectively "Mulroe").

24      b.    Treatment: Class "B" receives nothing under the Plan on account of its

25  secured claim pursuant to a settlement agreement between the members of this class and Debtor

26  wherein this secured claim is transferred to Debtor pursuant to Section 551 and Mulroe receives a

27  general unsecured claim in the allowed amount of $500,000 (Class "J"). On the Confirmation

28  Date, Mulroe shall release and transfer their lien against property of the Estate. As part of their

Printed on Recycled Paper

settlement, Debtor shall also release all claims of the Estate, including those asserted in the

adversary actions styled: Karykeion, Inc., a California Corporation vs. John Mulroe and

Affordable Properties Adversary No. 1:09-ap-01196-MT (Bankr. C.D. Cal.); and Karykeion, Inc.,

a California corporation and Edward Rubin, M.D., an individual vs. John Mulroe, an individual, et

al., Adversary No. 1:09-ap-01028-MT (Bankr. C.D. Cal.). As of this date, the Court has not

approved the aforesaid settlement. If the settlement is not approved, the amount due this class will

be reserved by the Liquidating Trustee pending resolution of these claims.

      c.     <u>Voting</u>: Class "B" cannot vote because it receives nothing under the Plan

on account of its secured claim and therefore is deemed to have rejected the Plan under Section

1126(g). However, if the settlement is approved, members of this class can vote their allowed

unsecured claims in Class "J".

     5.    <u>Class "C"</u>

      a.     <u>Classification</u>: Class "C" consists of the allowed secured claim of

Huntington Park Doctors Group, LLC ("HPDG").

      b.     <u>Treatment</u>: Class "C" shall receive $302,231.11 on the Confirmation Date.

This sum represents 85% of its allowed claim of $250,000 with interest of $116,161.09 through

March 31, 2010 and pre-petition attorneys' fees of $78,235.15 less adequate protection payments

of $96,000 as specified in Stipulation to Allow Secured Claim. If the Confirmation Date is other

than March 31, 2010, the amount of interest will be adjusted up or down to account for that

change.

     If HPDG seeks additional legal fees, it must apply to the Court for these additional

fees. Such application shall be made no more than 20 days after the Confirmation Date. If such

additional fees are awarded, the Creditor Trust will pay them either (i) 10 days after they are

allowed or (ii) 10 days after the Effective Date, which is later.

     Failure to make a timely application for such fees shall forever bar HPDG from

seeking such fees.

      c.     <u>Voting</u>:     HPDG is impaired and is allowed to vote on the Plan.

Printed on Recycled Paper

6. Class "D"

    a.   Classification: Class "D" consists of the allowed secured claim of Cardinal Health ("Cardinal").[3]

    b.   Treatment: Class "D" shall receive the value of its security on the Confirmation Date ($78,830.31) less any adequate protections payments it has received ($62,500.00). Computation of the value of Cardinal's security is set forth in the Disclosure Statement. Cardinal's prior election for treatment as fully secured under section 1111(b) is inapplicable because Debtor does not propose to retain the property securing Cardinal's claim under the Plan.

    c.   Voting: Class "D" is impaired and may vote to accept or reject the Plan. Class "D" also receives an unsecured claim in the amount of $1,362,171.72. Cardinal may also vote to accept or reject the plan as part of Class "J".

7. Class "E-1"

    a.   Classification: Class E-1 consists of the secured claim of Sterling Bank ("Sterling") on the Mission Hospital property located 3111 East Florence Avenue, Huntington Park, CA 90255.

    b.   Treatment: On the Confirmation Date, Sterling will retain its lien in the Mission Hospital property, and Debtor will assert no further interest in that property. To the extent that Sterling is undersecured, it will have a general unsecured claim in Class "J". Distributions, if any, in connection with such unsecured claim will be reduced dollar for dollar by adequate protection payments received ($330,260.65) or deemed received by Sterling. Debtor also asserts claims to "surcharge" Sterling's collateral under Section 506(c). Sterling's distributions on account of any unsecured claim shall be reduced by the amount of the surcharge. If Sterling forecloses on its collateral by means of a non-judicial foreclosure sale, Sterling shall be

---

[3]     "Cardinal Health" includes the following affiliated operating entities: Cardinal Health 200, Inc., a Delaware corporation; Cardinal Health 414, LLC, a Delaware limited liability company; Cardinal Health Solutions, Inc. (f/k/a Cardinal Health 109, Inc. and f/k/a Cardinal Health 303, Inc.), a Delaware corporation.

Printed on Recycled Paper

1  deemed to have waived its right to an unsecured claim in Class "J". Such foreclosure shall not

2  operate to impair the Estate's rights under Section 506(c).

3       c.    Voting: Class "E-1" is impaired and can vote to accept or reject the Plan.

4    8.    Class "E-2"

5       a.    Classification: Class E-2 consists of the secured claim of Sterling Bank

6  ("Sterling") on the Medical Office Building located at 3100 E. Florence Avenue, Huntington Park,

7  California 90255 (the "MOB").

8       b.    Treatment: On the Confirmation Date, Sterling will retain its lien upon the

9  MOB and Debtor will assert no further interest in that property. To the extent that Sterling is

10  undersecured, it will have a general unsecured claim in Class "J". Distributions, if any, in

11  connection with such unsecured claim will be reduced dollar for dollar by adequate protection

12  payments ($330,260.65) received or deemed received by Sterling. Debtor also asserts claims to

13  "surcharge" Sterling's collateral under Section 506(c). Sterling's distributions on account of any

14  unsecured claim shall be reduced by the amount of such surcharge. If Sterling forecloses on its

15  collateral by means of a non-judicial foreclosure sale, Sterling shall be deemed to have waived its

16  right to an unsecured claim in Class "J". Such foreclosure shall not operate to impair the Estate's

17  rights under Section 506(c).

18       c.    Voting: Class "E-2" is impaired and can vote to accept or reject the Plan.

19    9.    Class "F-1"

20       a.    Classification: Class F-1 consists of the secured claim of Business Loan

21  Conduit No. 2 ("BLC2") on Mission Hospital.

22       b.    Treatment: On the Confirmation Date, BLC2 will retain its lien on Mission

23  Hospital and Debtor will assert no further interest in that property. To the extent that BLC2 is

24  undersecured, it will have a general unsecured claim in Class "J". Distributions, if any, in

25  connection with such unsecured claim will be reduced dollar for dollar by adequate protection

26  payments ($124,732.75) received or deemed received by BLC2. Debtor also asserts claims to

27  "surcharge" BLC2's collateral under Section 506(c). BLC2's distributions on account of any

28  unsecured claim shall be reduced by the amount of such surcharge. If BLC2 forecloses on its

collateral by means of a non-judicial foreclosure sale, BLC2 shall be deemed to have waived its right to an unsecured claim in Class "J". Such foreclosure shall not operate to impair the Estate's rights under section 506(c).

        c.    <u>Voting</u>:  Class "F-1" is impaired and can vote to accept or reject the Plan only if it is determined that there is value to the collateral that secures its claim.  If the collateral has no such value, then Class F-1 shall not be entitled to vote with respect to its secured claim, and may only vote as a general unsecured creditor in Class "J".

    10.    <u>Class "F-2"</u>

        a.    <u>Classification</u>: Class F-2 consists of the secured claim of BLC2 on the MOB.

        b.    <u>Treatment</u>:  On the Confirmation Date, BLC2 will retain its lien on the MOB and Debtor will assert no further interest in that property.  To the extent that BLC2 is undersecured, it will have a general unsecured claim in Class "J".  Distributions, if any, in connection with such unsecured claim will be reduced dollar for dollar by any adequate protection payments ($124,732.75) received or deemed received by BLC2.  Debtor also asserts claims to "surcharge" BLC2's collateral under Section 506(c).  BLC2's distributions on account of its unsecured claim shall be reduced by the amount of such surcharge.  If BLC2 forecloses on its collateral by means of a non-judicial foreclosure sale, BLC2 shall be deemed to have waived its right to an unsecured claim in Class "J".  Such foreclosure shall not operate to impair the Estate's rights under section 506(c).

        c.    <u>Voting</u>:       Class "F-2" is impaired and can vote to accept or reject the Plan only if it is determined that there is value to the collateral that secures its claim.  If the collateral has no such value, then Class F-1 shall not be entitled to vote with respect to its secured claim, and may vote only as a general unsecured creditor in Class "J".

    11.    <u>Class "G"</u>

        a.    <u>Classification</u>: Class "G" consists of the secured recoupment or set-off claim of the Centers for Medicare and Medicaid Services ("CMS").

Printed on Recycled Paper

b. <u>Treatment</u>: CMS shall be paid in full 10 days after the Effective Date by the Creditor Trust. All assets sold to Avanti under the Plan are sold free and clear of any claim or other right such as one of recoupment by CMS or any other government agency such as the California Department of Health Services.[4]

c. <u>Voting</u>: CMS is unimpaired and may not therefore vote to assume or reject the Plan, under Section 1126(f).

12. <u>Class "H"</u>

<u>Classification</u>: Class "H" consist of the claims of allowed *pre-petition* wage, severance, sick leave and vacation claims entitled to a priority under Section 507(a)(4).

<u>Treatment</u>: With respect to employees who have been terminated on or before the Confirmation Date, the Section 507(a)(4) priority claim equals their pre-bankruptcy severance and Paid Time Off ("PTO") claim up to a maximum of $10,950 for severance, wages or benefits earned on or after March 22, 2008 but before September 22, 2008, *less* any PTO that such employees have taken after September 22, 2008 in excess of the amount of such PTO earned after that date. These claims will be paid in full 10 days after the Effective Date by the Creditor Trust.

With respect to those current employees of Debtor who are offered and accept employment with Avanti, Avanti will assume or pay up to $300,000 of either pre-petition or post

---

[4]     See: <u>In re BDK Health Management Inc.</u>, 1998 WL 34188241 (Bankr. M.D. Fla.), certain related debtors provided services to Medicaid patients and were thus in receipt of interim pre-payments subject to subsequent adjustment and recoupment by HHS. HHS instituted post-petition recoupment from the debtors' claims related to post-petition services based upon pre-petition and post-petition overpayments. The recoupment by HHS threatened the viability of the debtors as going concerns, jeopardizing the employment of 125 individuals who provide necessary home health care services to approximately 214 elderly, homebound patients. The debtors moved to sell the debtors' assets as operating entities, including the provider agreements otherwise subject to HHS adjustment, "free and clear" of the recoupment rights of HHS, based on the assertion that the overpayments were subject to a bona fide dispute pursuant to Section 363(f)(4) of the Code, and because HHS could be compelled to accept a money satisfaction of its recoupment rights under Section 363(f)(5). Invoking Section 105 due to the exigent circumstances surrounding the debtors' condition and over the objections of HHS, the bankruptcy court approved the sale of the debtors' assets, including the provider agreements, free and clear of any recoupment rights held by HHS. Debtor submits that the same exigencies obtain here and that the Court can authorize a sale of the provider agreements free and clear of any rights of recoupment.

Printed on Recycled Paper

petition PTO. The balance, if any, of their Class "H" claim will be paid 10 days after the Effective Date by the Creditor Trust. For all current or former employees, if their Class "H" claim exceeds $10,950 or was earned before March 22, 2008, those claims will be placed into Class "J".

Voting: Class "H" claims are unimpaired and therefore may not vote to accept or reject the Plan under Section 1126(f).

13.    Class "I"

Classification: Class "I" consist of employee benefit claims entitled to a priority under Section 507(a)(5).

Treatment:    Class "I" claims will be paid in full on the Effective Date.

Voting: Class "I" is unimpaired and therefore may not vote to accept or reject the Plan under Section 1126(f).

14.    Class "J"

Classification: Class "J" consists of all of the allowed general unsecured priority claims.

Treatment: After payment of all secured and priority claims and all post confirmation costs of administration, this class will receive the remaining AB 1383 Funds and all litigation recoveries  These monies will be distributed pro-rata among members of Class "J". Payments will be made by the Liquidating Trustee under the terms of the Creditor Trust, which shall provide for a reserve for disputed claims.

Voting: Class "J" is impaired and may vote to accept or reject the Plan.

15.    Class "K"  [DELIBERATELY OMITTED]

16.    Class "L"

Classification: Class "L" consists of the interest of the Rubin Trust as the sole shareholder of Debtor.

Treatment: Class "L" receives nothing under the Plan.

Voting: Class "L" is deemed to have rejected the Plan and cannot vote to accept or reject the Plan under Section 1126(g).

Printed on Recycled Paper

## II. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A. ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

### 1. Assumption of Agreements

On the Confirmation Date, Debtor in consultation with Avanti intends to assume all executory contracts and unexpired leases of Debtor listed on the Schedule of Assumed Agreements (Exhibit "1"). Debtor reserves the right to amend the Schedule of Assumed Agreements at any time prior to the Confirmation Date to: (a) delete any executory contract or unexpired lease and provide for its rejection under the Plan or otherwise, or (b) add any executory contract or unexpired lease and provide for its assumption under the Plan. Debtor will provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to the agreement affected by the amendment.

The Confirmation Order will constitute a Court order approving the assumption, on the Effective Date or such earlier date as may be appropriate, of all executory contracts and unexpired leases identified on the Schedule of Assumed Agreements.

### 2. Cure Payments

Any monetary amounts by which each executory contract and unexpired lease to be assumed is in default shall be satisfied, pursuant to Section 365(b)(l), by payment of the default amount (as set forth in the Debtor's books and records), a schedule of which will be filed and served by the Confirmation Date. All such payments shall be paid 10 days after the Effective Date unless the parties to each such executory contract or unexpired lease may otherwise agree.

### 3. Objections to Assumption

Any entity who is a party to an executory contract or unexpired lease that will be assumed under the Plan must File with the Court and serve upon interested parties a written statement and supporting declaration stating the basis for its objection. This statement and declaration must be filed and served by no later than March 5, 2010. Any entity that fails to timely file and serve such a statement and declaration will be deemed to waive any and all objections to the proposed assumption of its contract or lease. In the absence of a timely objection by an entity who is a party to an executory contract or unexpired lease, the Confirmation Order

Printed on Recycled Paper

1 shall constitute a conclusive determination as to the amount of any cure and compensation due

2 under the executory contract or unexpired lease, and that Debtor has demonstrated adequate

3 assurance of future performance with respect to such executory contract or unexpired lease.

4     4.   <u>Resolution of Claims Relating to Assumed Agreements</u>

5     In accordance with the procedures set forth in Section II.A.2 relating to the Cure

6 Payments, payment of the Cure Payments with respect to executory contracts or unexpired leases

7 that will be assumed under the Plan shall be deemed to satisfy, in full, any prepetition or post-

8 petition arrearage or other Claim asserted in a Filed proof of Claim or listed in the Schedules,

9 irrespective of whether the Cure Payment is less than the amount set forth in such proof of Claim

10 or the Schedules. Upon the tendering of the Cure Payment, such Claim shall be disallowed,

11 without further order of the Court or action by any party.

12 **B.**   **REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

13     1.   <u>Rejected Agreements</u>

14     On the Effective Date, Debtor in consultation with Avanti intends to reject all

15 executory contracts and unexpired leases set forth on the Schedule of Rejected Agreements

16 (Exhibit "2"). Exhibit "2" does not contain any contracts which Debtor has previously rejected.

17 The Confirmation Order will constitute a court order approving the rejection on the Confirmation

18 Date of the executory contracts and unexpired leases not assumed under the Plan. Debtor reserves

19 the right to amend the Schedule of Rejected Agreements at any time prior to the Confirmation

20 Date to: (a) delete any rejected executory contract or unexpired lease and provide for its

21 assumption under the Plan or otherwise, or (b) add any executory contract or unexpired lease and

22 provide for its rejection under the Plan. Debtor will provide notice of any amendment to the

23 Schedule of Assumed Agreements to the party or parties to the agreement affected by the

24 amendment.

25     2.   <u>Bar Date for Rejection Damage Claims</u>

26     Any claim for damages arising from the rejection of an executory contract or

27 unexpired lease under the Plan of an executory contract or unexpired lease must be filed and

28 served upon counsel for Debtor, counsel for the OCC and the Liquidating Trustee within 20 days

Printed on Recycled Paper

after the Confirmation Date. Any such Claims that are not timely Filed and served will be forever barred and unenforceable against Debtor, the Estate, the Creditor Trust and their respective property, and entities holding these Claims will be barred from receiving any distributions under the Plan on account of such untimely Claims.

**C.    POST-PETITION CONTRACTS AND LEASES.**

Except as expressly provided in the Plan or the Confirmation Order, all contracts, leases, and other agreements that Debtor entered into after the Petition Date will be retained by Avanti, unless expressly rejected by Debtor prior to the Confirmation Hearing.

**III.    MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**

**A.    FUNDING AND IMPLEMENTATION OF THE PLAN**

    1.    Plan Funding

The Plan will be funded by the following:

    a.    Cash on hand as of the Confirmation Date;

    b.    Proceeds from the Avanti Sale;

    c.    Litigation Recoveries; and

    d.    AB 1383 Funds.

Any impaired secured party that has made a timely election to treat their claim as fully secured under the Plan may elect to credit bid the amount of its claim at the Confirmation Hearing. Provided, that such credit bid is made on the same terms and conditions as provided by Avanti.

    2.    Payments on the Confirmation Date

The following payments will be made on the Confirmation Date:

    a.    Payment to Class "A" – CHHP

    b.    Payment to Class "C" – HPDG

    c.    Payment to Class "D" – Cardinal

    d.    Final payroll for Debtor's employees (administrative claim) (the "Final Payroll");

Printed on Recycled Paper

e. $336,000 to CIG on account of its administrative claim if the CIG Settlement is approved by the Court (the "CIG Payment"); and

f. $1,000,000 to pay professionals on an interim basis, up to 80% of all professional fees and 100% of costs as set forth on professional fee statements filed with the Court on or before the Confirmation Date (the "Professional Carve Out"), with any remaining balance being paid after final allowance of such fees from the Creditor Trust on the Effective Date.[5]

3. <u>Creditor Trust and Disbursing Agent</u>

The Liquidating Trustee shall administer the Creditor Trust and act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Liquidating Trustee shall serve without bond and shall be compensated as follows:

a. An hourly fee for administering litigation on behalf of the Creditor's Trust of $95-$295 per hour;

b. 1.75% of aggregate funds disbursed for distribution services rendered, subject to a cap of $3737,500; and

c. Certain expenses identified in the Creditor Trust Agreement.

4. <u>Payments on or after the Effective Date</u>

Ten (10) days after the Effective Date, the Liquidating Trustee will make the following payments from the Creditors' Trust in the following order:

a. All allowed expenses of administration;

b. All cure payments for executory contracts and unexpired leases identified on the Schedule of Assumed Agreements;

c. All payments due to Class "G" – CMS recoupment claims;

d. All payments to Classes "H" and "I";

e. The Avanti Reserve (as defined in Part III.B.1 hereof) of up to $5,000,000;

f. The Creditor Trust Administrative Reserve of up to $400,000; and

---

[5] Daniel Ansel shall continue as chief restructuring officer after the Confirmation Date until the Effective Date.

Printed on Recycled Paper

1    g.    If funds are available, all monies payable to the holders of tax claims

2          entitled to a priority under Section 507(a)(8).

3  **B.  CREDITOR TRUST CREATION, ADMINISTRATION AND RESERVES**

4    1.    <u>The Avanti Reserve</u>

5          The Liquidating Trustee shall pay the amount of a reserve ("Avanti Reserve") into

6  a separate escrow ("Escrow") established for the following purposes: (i) potential CMS or Medi-

7  Cal recoupments arising from payments made by CMS or Medi-Cal prior to the Sale but offset by

8  these agencies against amounts paid by them after the Sale; (ii) $50,000 per month administrative

9  fee ("Avanti Administrative Fee") payable under the Interim Management Agreement with

10  Avanti; and (iii) to secure Debtor's indemnification obligations under the Sale agreement between

11  Debtor and Avanti.

12    a.    The amount of the Avanti Reserve shall be $5,000,000, subject to the

13          following:

14    (i)    $300,000 shall be placed in the reserve to fund 6 months of Avanti's

15          Administrative Fee. Avanti will be authorized to withdraw monthly

16          installments of $50,000 from the Escrow to pay its Administrative

17          Fee. Any amount not used to pay the administrative fee shall be

18          remitted to the Creditor Trust upon termination of the interim

19          management agreement entered into with Avanti until Debtor has

20          received all of the AB1383 Funds;

21    (ii)    Up to $500,000 shall be placed in the Reserve to secure Debtor's

22          indemnification obligations under the definitive agreements with

23          Avanti. This amount will be released to the Creditor Trust two years

24          after the Confirmation Date to the extent not used to satisfy any

25          indemnification obligations under the Sale agreement; and

26    (iii)    The balance of the $5,000,000 of the Avanti Reserve shall be placed

27          in the Escrow to secure any recoupment obligations to Medicare and

28          Medi-Cal. Any amounts not used for this purpose shall be remitted

Printed on Recycled Paper

to the Creditor Trust from the Escrow on the earlier of (A) payment

of any recoupment claims of Medicare and Medi-Cal, either

pursuant to a closing agreement entered into by Debtor with those

agencies or pursuant to an allowed claim determined by the Court as

a result of an estimation hearing under Section 502(c) and (B) the

termination of the interim management agreement.

    c.    The Escrow shall be authorized to pay, without further order of the Court, to

Avanti its monthly administrative fee of $50,000 until the interim

management agreement terminates.

    d.    The Avanti Reserve shall be funded exclusively from the AB 1383 Funds

remaining after payment of all monies set forth in Part III.A.4 (a-d).

    e.    The Escrow shall terminate and any funds held therein shall be transferred

to the general account of the Creditor Trust in accordance with the

provisions of Part III B.1.a.(i)-(iii).

    f.    To the extent that the AB 1383 Funds are insufficient to fully fund the

Avanti Reserve, the Liquidating Trustee may fund it from AB1383 Funds

received after the Effective Date.

2.    <u>Creditor Trust Administrative Reserve</u>

The Liquidating Trustee shall establish as segregated administrative reserve ("CT

Administrative Reserve") from the Estate's assets as follows:

    a.    The Liquidating Trustee may replenish the CT Administrative Reserve from

AB 1383 Funds received after the Effective Date and any litigation

proceeds without further order of the Court; and

    b.    CT Administrative Reserve shall segregate the following sums for the

purposes designated:

        (i)    $150,000 to pay for the Liquidating Trustee's services;

        (ii)    $50,000 to pay for Debtor's post-petition and post-confirmation

tax returns; and

Printed on Recycled Paper

(iii)     $200,000 to pay for the Creditor Trust's professional fees.

**C.  CREATION OF THE CREDITOR TRUST, APPOINTMENT OF THE LIQUIDATING TRUSTEE AND THE POST CONFIRMATION COMMITTEE**

1.     Creation of the Creditor Trust

The Confirmation Order shall approve the formation of the Creditor Trust on the Effective Date and the Creditor Trust Agreement, substantially in the form attached as Exhibit "3", subject to modification prior to the Confirmation Date, to conform its provisions to the provisions of this Plan and the Confirmation Order.  The Creditor Trust Agreement shall provide for the appointment of the Liquidating Trustee, to act as the trustee to administer the Creditor Trust.  The Liquidating Trustee shall serve without any bond and shall act in accordance with the Creditor Trust Agreement and the Plan.  The Liquidating Trustee shall be entitled to receive, on a monthly basis, payment of reasonable fees and reimbursement of reasonable expenses without further Court approval from the assets of the Creditor Trust, in accordance with the Creditor Trust Agreement.  The Liquidating Trustee shall serve for the duration of the Creditor Trust, subject to earlier death, resignation, incapacity or removal as specifically provided in the Creditor Trust Agreement.

2.     Funding of the Creditor Trust.

The Creditor Trust will be funded as follows:

a.     On the Effective Date, Debtor shall pay all sums in its possession after payment of the distributions to Classes "A", "C" and "D", the Final Payroll, the CIG Payment and the Professional Carve-out.

b.     AB 1383 Funds received on or about the Effective Date;

c.     AB 1383 Funds received after the Effective Date; and

d.     Litigation Recoveries.

3.     Section 1123(b)(3)(B) Representative

The Confirmation Order shall operate to appoint the Liquidating Trustee to be the section 1123(b)(3)(B) representative of the Estate.   As such, the Liquidating Trustee shall have all of the rights and immunities conferred upon the Estate and its representative under Section 323,

Printed on Recycled Paper

1  including the benefits of the tolling provisions of Section 108 and the right to assert any defense

2  available to Debtor under Section 558. However, nothing herein shall be deemed appointing the

3  Liquidating Trustee to be the trustee or examiner of the Estate.

4        4.     Avoidance Actions

5        On the Confirmation Date, all right, title and interest in the Avoidance Actions shall be

6  transferred to the Creditor Trust. The Liquidating Trustee is authorized to bring such actions for

7  the benefit of the estate and to retain professionals to prosecute such actions. Unless the Court has

8  already approved the employment of a professional, any professional retained to prosecute such

9  action must file an application to have its employment approved by the Court. Professionals

10 retained by the Liquidating Trustee may be paid in the ordinary course without further order of the

11 Court.

12       5.     Claim Objections

13       The Liquidating Trustee shall be authorized to object to any claim filed against the

14 estate. In connection with any such objection, the Liquidating Trustee is authorized to retain

15 professionals, including D&A Management to assist in such objections. The Liquidating Trustee

16 is authorized to pay such professionals in the ordinary of business to assist in such objections.

17 Unless the Court has already approved the employment of a professional, any professional

18 retained to prosecute such action must file an application to have its employment approved by the

19 Court. Professionals retained by the Liquidating Trustee may be paid in the ordinary course

20 without further order of the Court.

21       6.     Powers and Duties

22       In addition to any other powers set forth above, the Liquidating Trustee shall have

23 the following rights, powers and duties:

24       a.     Hold all assets of the Creditor Trust

25       b.     Full right, power and discretion to manage such property and execute

26             acknowledge and deliver any and all instruments as may be appropriate or

27             necessary as determined by the Liquidating Trustee in his discretion;

28

Printed on Recycled Paper

c. Make interim and final distributions to the holders of unpaid allowed administrative claims and claims in Classes "G", "H", "I" and "J;

d. Administer the collection, prosecution, settlement, or abandonment of the Avoidance Actions or other causes of action that Estate may have;

e. Prosecute, settle or abandon objections to claims;

f. File all tax and regulatory forms, returns, reports and other documents required with respect to the Creditor Trust; and

g. File suit or any appropriate motion for relief in the Court or in any other court of competent jurisdiction to resolve any claim, disagreement, conflict or ambiguity in connection with the exercise of his rights, powers or duties.

7. Termination of the Creditor Trust

a. The Creditor Trust shall be revocable only upon an order of the Court and for good cause shown;

b. The Creditor Trust shall terminate when the Liquidating Trustee shall have performed all of its duties under the Plan and the Creditor Trust Agreement, including the final distribution of all the property of the Creditor Trust to any party entitled to a distribution under the Plan;;

c. Upon good cause shown, the Court may modify the rights, powers and duties of the Creditor Trust or the procedures for appointing successors to the Creditor Trustees in light of material changes in circumstances upon the motion of the Creditor Trust;; and

d. Unless otherwise ordered by the Court, the Creditor Trust shall terminate no later than five years after the Confirmation Date.

8. Additional Provisions of the Creditor Trust Agreement

In addition to the provisions in the Plan with respect to the Creditor Trust, the Creditor Trust Agreement will provide for, among other things, other actions to be taken by the Creditor Trust and the Liquidating Trustee, the removal of the Liquidating Trustee or appointment of a successor to the Liquidating Trustee, the liability of the Liquidating Trustee, the effect of

Printed on Recycled Paper

1  actions by the Liquidating Trustee, and the indemnification of the Liquidating Trustee. To the

2  extent not set forth in the Plan, the functions and procedures applicable to the Creditor Trust and

3  the powers and duties of the Liquidating Trustee and the rights of the beneficiaries of the Creditor

4  Trust shall be governed by the Creditor Trust Agreement.

5       9.    Post-Confirmation Committee ("PCC").

6            a.    The members of the PCC shall be selected by the OCC prior to the

7                Confirmation Date.

8            b.    The PCC shall have the following powers: (i) power to approve all

9                settlements between the Liquidation Trustee and any party with regard any

10                dispute in which the amount in controversy exceeds $25,000; (ii) select a

11                successor trustee; (iii) remove the Liquidation Trustee for cause; and (iv)

12                approve any modification of the terms of the Creditor Trust.

13  **D.**   **REVESTING OF ASSETS.**

14       1.    Creditor Trust

15       Except as otherwise provided in the Plan, all property of the Estate shall vest in the

16  Creditor Trust free and clear of all claims, liens, encumbrances, and interests, except as expressly

17  provided in the Plan on the Confirmation Date, including any right of recoupment that might be

18  asserted by any party having a contract with Debtor. From and after the Confirmation Date, the

19  Liquidating Trustee may operate their business and use, acquire and dispose of property without

20  supervision by the Court and free of any restrictions of the Code or the Rules, other than those

21  restrictions expressly imposed by the Plan and the Confirmation Order.

22       2.    Avanti

23            a.    Assets

24       Avanti shall acquire the following assets of Debtor free and clear of liens rights and

25  interests:

26            (i)    All owned and or leased real property and improvements related to

27                Community Hospital including the lease for Community Hospital itself, and

28                the lease for the administrative offices located at 5800-5806 Pacific

Printed on Recycled Paper

| | | |
|---|---|---|
| 1 | | Avenue, Huntington Park, California 90255 (the "Administrative Offices") |
| 2 | | (collectively these two leases are referred to herein as the "Leases"); |
| 3 | (ii) | All owned and or leased personal property and other tangible assets, |
| 4 | | including without limitation, furniture, fixtures, equipment, supplies, drugs, |
| 5 | | and the like; |
| 6 | (iii) | All rights under all Assigned Contracts, including but not limited to the |
| 7 | | Medicare and Medi-Cal provider agreements, as further discussed below, |
| 8 | | and other intangible rights, including without limitation all assignable |
| 9 | | intellectual property and licenses, and good will associated with the |
| 10 | | Hospital Businesses except as otherwise mutually agreed; |
| 11 | (iv) | All accounts receivables associated with the Hospital Businesses including |
| 12 | | but not limited to Disproportionate Share payments, Distressed Hospital |
| 13 | | Fund payments, and or other grants or proceeds from governmental entities |
| 14 | | paid after the Confirmation Date; and |
| 15 | (v) | All records associated with the Hospital Businesses, subject to reasonable |
| 16 | | and customary records retention requirements and rights of access in order |
| 17 | | to fulfill Seller's legal obligations. In so doing, a consumer privacy |
| 18 | | ombudsman is not required pursuant to Section 332. |

19    b.    Liabilities

20    Avanti acquires the assets of Debtor specified in the Avanti Agreement on the

21    Confirmation Date free and clear of any liabilities of Debtor including, but not limited to, those of

22    CMS and other governmental agencies that seek a right of set-off or recoupment against either

23    Debtor's accounts receivable or any accounts receivable generated by Avanti arising out of the

24    operation of Community Hospital after the Confirmation Date. Likewise, Avanti succeeds to no

25    liability of Debtor under its collective bargaining agreements under either the agreements

26    themselves or the Labor Management Relations Act.

27

28

**E.   PRESERVATION/REVESTING OF RIGHTS OF ACTION.**

Except as expressly released or otherwise expressly provided in the Plan, pursuant to Section 1123(b), the Creditor Trust shall be vested with and shall retain and may enforce any claims, rights, and causes of action that Debtor or the Estate may hold or have against any person or entity, all of which are hereby preserved, including rights of disallowance, offset, recharacterization or equitable subordination with respect to claims and interests, and causes of action that have been or may be brought by or on behalf of Debtor or the Estate.

**F.   BAR DATE FOR OBJECTIONS TO CLAIMS**

The last date to file objections to claims shall be 180 days after the Effective Date.

**G.   DISTRIBUTION OF PROPERTY UNDER THE PLAN**

The following procedures set forth in the Plan apply to distributions made pursuant to this Plan by the Liquidating Trustee; who will make all distributions under the Plan, unless otherwise provided. To the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on him by any governmental unit in making cash distributions under the Plan and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

1.   Manner of Cash Payments Under the Plan

Cash payments to domestic entities holding Allowed Claims will be tendered in U.S. Dollars and will be made by checks drawn on a domestic bank or by wire transfer from a domestic bank.

2.   No *de minimis* Distributions

Notwithstanding anything to the contrary in this Plan, the Liquidating Trustee will make no distributions of less than $100, except to creditors in Classes "H" and "I" and creditors who are either patients or employees entitled to distributions under Class "J".

3.   No Distribution With Respect to Disputed Claims

No payments of cash or distributions of other property or other consideration of any kind shall be made on account of any disputed claim unless and until such claim becomes an allowed claim or is deemed to be such for purposes of distribution, and then only to the extent that

Printed on Recycled Paper

the claim becomes, or is deemed to be for distribution purposes, an allowed claim.  Unless

otherwise provided herein, any holder of a claim that becomes an allowed claim after the Effective

Date will receive its distribution within 10 days from the date that such claim becomes an allowed

claim.

    4.    <u>Delivery of Distributions and Undeliverable or Unclaimed Distributions</u>

    a.    <u>Delivery of Distributions in General</u>

    The Liquidating Trustee shall make distributions to each holder of an allowed

claim by mail as follows: (i) at the address set forth on the proof of Claim filed by such holder of

an allowed claim; (ii) at the address set forth in any written notice of address change delivered to

the Liquidating Trustee after the date of any related proof of Claim; and (iii) at the address

reflected in the Schedules if no proof of Claim is filed or the Liquidating Trustee has not received

a written notice of a change of address.

    b.    <u>Undeliverable and Unclaimed Distributions</u>

    If the distribution to the holder of any allowed claim is returned as undeliverable,

no further distribution shall be made to such holder unless and until the Liquidating Trustee is

notified in writing of such holder's then current address.   Subject to the other provisions of the

Plan, undeliverable distributions shall remain in the possession of the Liquidating Trustee pursuant

to this Section until such time as a distribution becomes deliverable.   The Liquidating Trustee will

hold all undeliverable cash distributions in an unsegregated bank account for the benefit of the

creditors entitled to the distributions.  The bank account will be maintained in the name of the

Creditor Trust but it will be accounted for separately.

    Any holder of an allowed claim who does not assert a claim in writing for an

undeliverable distribution within one year after the Effective Date shall no longer have any claim

to or interest in such undeliverable distribution, and shall be forever barred from receiving any

distributions under this Plan, or from asserting a claim against Debtor, the Creditor Trust, the

Estate and their respective property.  At that time, the claim giving rise to the undeliverable

distribution will be discharged.  <u>Nothing contained in the Plan shall require Debtor or the</u>

<u>Liquidating Trustee to attempt to locate any holder of an allowed claim for the purposes of making</u>

Printed on Recycled Paper

distribution hereunder.  At the termination of the Creditor Trust, the Liquidating Trustee may seek a court order for the disposition of any unclaimed funds.

**H.    ESTIMATION OF DISPUTED CLAIMS FOR DISTRIBUTION PURPOSES**

After the Confirmation Date, the Liquidating Trustee or any other party in interest may move for a Court order estimating any disputed claim.  The estimated amount of any disputed claim so determined by the Court shall constitute the maximum recovery that the holder thereof may recover after the ultimate liquidation of its disputed claim, irrespective of the actual amount ultimately allowed.

**I.    CANCELLATION OF INTERESTS**

All interests in Debtor will be cancelled, annulled, and extinguished, and will be deemed to of no further force or effect without any further action by any party effective upon the termination of the Creditor Trust.  During that time, the Rubin Trust and its trustee are hereby enjoined from revoking Debtor's election under subchapter S of 26 U.S.C. § 1362.  Any party holding such interests will retain no rights and receive no consideration on account of these interests.

**J.    FULL SATISFACTION**

Holders of a claim will receive the distributions specified in the Plan in full satisfaction and discharge of such claim.

**K.    COMPLIANCE WITH TAX REQUIREMENTS**

The Liquidating Trustee shall comply with all withholding and reporting requirements imposed on it by governmental units, if any, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

**L.    SETOFF, RECOUPMENT AND OTHER RIGHTS**

Notwithstanding anything to the contrary contained in the Plan, the Liquidating Trustee may, but shall not be required to, setoff, recoup, assert counterclaims or withhold against the distributions to be made pursuant to this Plan on account of any claims that Debtor, the Estate, or the Creditor Trust may have against the entity holding an allowed claim; provided, however, that neither the failure to effect such a set off or recoupment, nor the allowance of any claim against the Debtor, the Creditor Trust or the Reorganized Debtor, nor any partial or full payment during

Printed on Recycled Paper

the case or after the Effective Date with respect to any allowed claim, shall constitute a waiver or release by Debtor, the Estate or the Creditor Trust of any claim that they may possess against such holder.

**M.     CONDITIONS TO EFFECTIVENESS**

    1.     <u>Conditions</u>

      The Plan shall not become binding unless and until the Effective Date occurs.  The Effective Date is the first business day, on which no stay of the Confirmation Order is in effect, on which all of the following conditions have been satisfied or waived:

        a.     The Confirmation Order shall have become a Final Order;

        b.     Debtor's receipt of the first distribution of AB 1383 Funds;

        c.     The Liquidating Trustee accepts in writing its trusteeship of the Creditor Trust; and

        d.     All other agreements, writings and undertakings required under the Plan shall be executed and ready for consummation.

Upon the satisfaction of the foregoing, the Liquidating Trustee shall mail a "Notice of Occurrence of Effective Date" to all creditors and interest holders.

    2.     <u>Waiver of Conditions</u>

      The requirement that the conditions to the occurrence of the Effective Date be satisfied may be waived in whole or in part, and the time within which any such conditions must be satisfied may be extended by Debtor or the Liquidating Trustee.  The failure to timely satisfy or waive any of such conditions may be asserted by Debtor or the Liquidating Trustee regardless of the circumstances giving rise to the failure of such condition to be satisfied, including any action or inaction by Debtor. or the Liquidating Trustee.  Failure of Debtor or the Liquidating Trustee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed ongoing and subject to assertion at any time.

Printed on Recycled Paper

# IV.    OTHER PLAN PROVISIONS

**A.    EXCULPATION: NO LIABILITY FOR SOLICITATION OR PROSECUTION OF CONFIRMATION**

None of Debtor, the Estate, the OCC, Avanti, the Liquidating Trustee, or any of the foregoing parties' respective members, officers, directors, employees, advisors, professionals or agents shall have or incur any liability to any holder of a claim or interest for any act or omission occurring on or after the Petition Date in connection with, related to, or arising out of the Case, the pursuit of confirmation of the Plan, the consummation or administration of the Plan, or property to be distributed under the Plan, except for willful misconduct or gross

**B.    EXEMPTION FROM CERTAIN TRANSFER TAXES**

In accordance with Section 1146(c), the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under the Plan may not be taxed under any law imposing a stamp tax or similar tax. The Confirmation Order shall direct all governmental officials and agents to forego the assessment and collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax or other governmental assessment.

**C.    NONAPPLICABILITY OF LOCAL RULE 3020-1(B)**

The Liquidating Trustee will not be required to comply with Local Bankruptcy Rule 3020-1(b), which requires the filing of certain status reports after the Confirmation Date.

**D.    SUCCESSORS AND ASSIGNS**

The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

**E.    SATURDAY, SUNDAY OR LEGAL HOLIDAY**

If any payment or act under the Plan is required to be made or performed on a day that is not a business day, then the payment or act may be completed on the next day that is a business day, in which event the payment or act will be deemed to have been completed on the required day.

Printed on Recycled Paper

## I. HEADINGS

The headings used in the Plan are inserted for convenience only and do not constitute a portion of this Plan or in any manner affect the provisions of this Plan or their meaning.

## J. SEVERABILITY OF PLAN PROVISIONS

If before confirmation the Court holds that any Plan term or provision is invalid, void or unenforceable, the Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms.

## K. GOVERNING LAW

Unless a rule of law or procedure is supplied by (a) federal law (including the Code and the Rules), or (b) an express choice of law provision in any agreement, contract, instrument, or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents, and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California without giving effect to the principles of conflict of laws thereof.

## V. EFFECT OF CONFIRMATION OF THE PLAN

## A. DISCHARGE AND INJUNCTION

1. The rights afforded in the Plan and the treatment of all claims and interests shall be in exchange for and in complete satisfaction, discharge, and release of all claims and interests of any nature whatsoever arising prior to the Effective Date, including any interest accrued on such claims from and after the Petition Date (except as otherwise ordered by the Court), against the Estate, the Creditor Trust and their property.

Printed on Recycled Paper

2.     Except as otherwise provided in the Plan or the Confirmation Order, the Plan and Confirmation Order shall:

       a.     on the Effective Date, discharge and release, the Estate, and the Creditor Trust to the fullest extent permitted by Sections 524 and 1141 from all claims and interests, including all debts, obligations, demands, liabilities, claims, and interests that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i), regardless of whether or not (i) a proof of claim or proof of interest based on such debt or interest is filed or deemed filed, (ii) a claim or interest based on such debt or interest is allowed pursuant to Section 502, or (iii) the holder of a claim or interest based on such debt or interest has or has not accepted the Plan;

       b.     void any judgment underlying a claim discharged hereunder; and

       c.     preclude all entities from asserting against the Estate, the Creditor Trust and their respective property any claims or interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

3.     Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all entities who have held, currently hold, or may hold a debt, claim, or interest against Debtor, the Estate, the Creditor Trust or their respective property that is based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date, that otherwise arose or accrued prior to the Confirmation Date, or that is otherwise discharged pursuant to the Plan, shall be permanently enjoined from taking any of the following actions on account of any such debt, claim, or interest (the "Permanent Injunction"):

       a.     commencing or continuing in any manner any action or other proceeding against Debtor, the Estate, the Creditor Trust, Avanti or their respective property that is inconsistent with the Plan or the Confirmation Order;

       b.     enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Estate, the Creditor Trust,

Printed on Recycled Paper

1    Avanti or their respective property other than as specifically permitted

2    under the Plan as approved by the Confirmation Order;

3    c.    creating, perfecting, or enforcing any lien or encumbrance against Debtor,

4    the Estate, the Creditor Trust, Avanti, or their respective property; and

5    d.    commencing or continuing any action, in any manner, in any place that does

6    not comply with or is inconsistent with the provisions of the Plan, the

7    Confirmation Order, or the discharge provisions of Bankruptcy Code

8    section 1141. Any entity injured by any willful violation of such Permanent

9    Injunction shall recover actual damages, including costs and attorneys' fees,

10    and, in appropriate circumstances, may recover punitive damages, from the

11    willful violator.

12    **B.    PAYMENT OF U.S. TRUSTEE FEES**

13    The Liquidating Trustee shall pay all U.S. Trustee Fees in accordance with Section I.B.1.

14    **C.    RETENTION OF JURISDICTION**

15    Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective

16    Date, the Court shall retain jurisdiction over the case after the Effective Date to the fullest extent

17    provided by law, including the jurisdiction to:

18    1.    Allow, disallow, determine, liquidate, classify, establish the priority or secured or

19    unsecured status of, estimate, or limit any claim or interest, and with respect to any

20    claim based on personal injury, medical malpractice or wrongful death;

21    2.    Grant or deny any and all applications for allowance of compensation or

22    reimbursement of expenses authorized pursuant to the Code or the Plan, for periods

23    ending on or before the Effective Date;

24    3.    Resolve any motions pending on the Effective Date to assume, assume and assign,

25    or reject any executory contract or unexpired lease to which the Debtor is a party or

26    with respect to which Debtor may be liable and to hear, determine and, if

27    necessary, liquidate, any and all Claims arising therefrom;

28

Printed on Recycled Paper

4.   Ensure that distributions to holders of allowed claims, including but not limited to administrative claims, are accomplished pursuant to the provisions of the Plan;

5.   Resolve any and all applications, motions, adversary proceedings, and other matters involving Debtor that may be pending on the Effective Date or that may be instituted thereafter in accordance with the terms of the Plan;

6.   Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents entered into in connection with the Plan;

7.   Resolve any and all controversies, suits, or issues that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any party's rights or obligations in connection with the Plan;

8.   Modify the Plan before or after the Effective Date pursuant to Section 1127, or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any order of the Court, the Plan, the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

9.   Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

10.   Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

11.   Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan; and

Printed on Recycled Paper

1          12.     Enter an order closing the case.

2  If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any

3  matter, this section shall have no effect upon and shall not control, prohibit, or limit the exercise of

4  jurisdiction by any other court having competent jurisdiction with respect to such matter.

Printed on Recycled Paper

## VI.    RECOMMENDATION AND CONCLUSION

Debtor believes that Plan confirmation and implementation are preferable to any alternatives presented to creditors and results in the greatest recovery for the greatest number of constituents.

Accordingly, Debtor submits that confirmation of creditors as the most favorable one available.

Dated: February 19, 2010

KARYKEION, INC.,
Debtor and Debtor in Possession


By:    /s/    *Daniel J. Ansel*
     Daniel J. Ansel,
     Chief Restructuring Officer


**WEISS & SPEES, LLP**


By:    /s/    *Michael H. Weiss*
     Michael H. Weiss
     Attorneys for Debtor and Debtor-in-
     Possession

Printed on Recycled Paper

# DEFINITIONS AND RULES OF CONSTRUCTION

**A.    DEFINITIONS.**

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

**"AB 1383 Funds"** means monies paid from the Medi-Cal Hospital Provider Rate Stabilization Act promulgating Welfare & Institutions Code §§ 14167.1-14167.17 and the Quality Assurance Fee Act promulgating Welfare & Institutions Code §§ 14167.31-41.

**"Administrative Claim"** means a Claim for administrative costs or expenses entitled to priority under Bankruptcy Code section 507(a)(2) or (b).

**"Allowed" or "allowed"** means a "claim" of any type which the Code or the Court has permitted as set forth in Section 501.

**"Avanti"** means Avanti Health Systems, LLC or its designee.

**"Avoidance Actions"** mean the causes of action held by Debtor or the Estate that arise out of Sections 510, 542, 544, 547, 548, 549, 550, 551, and 553, but excluding such causes of action against. The Creditor Trust shall be vested with the right to pursue Avoidance Actions on behalf of the Estate against all parties.

**"Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

**"Court"** means the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division, or any other court that exercises jurisdiction over the Case.

**"Rules"** means either (a) the Federal Rules of Bankruptcy Procedure or (b) the Local Rules of the Court, as applicable.

**"BLC2"** means Business Loan Conduit No. 2, LLC, a Delaware corporation.

**"Business Day"** means a day that is not a Saturday, Sunday, or legal holiday.

**"Case"** means Debtor's case under chapter 11 of the Bankruptcy Code.

**"CHHP"** means CHHP, Inc.

**"CIG"** means collectively, the Commercial Investment Group, consisting of Pasha Properties Investments, LLC, Commercial Investment Exchange, L.P., Desert Field, LLC, Desire

Printed on Recycled Paper

Investment, LLC, Lior Investment, LLC, Mission Property Management and Personnel Leasing, Inc.

**"Claim" or "claim"** means a claim defined 101(5) defines the term "claim" — against the Debtor or the Debtor's property.

**"Class"** means a group of claims or interests as classified in the Plan pursuant to Section 1122.

**"Community Hospital"** means the property located at 2623 E Slauson Ave, Huntington Park, CA 90255.

**"Confirmation Date"** means the date of entry of the Confirmation Order.

**"Confirmation Hearing"** means the hearing by the Court on confirmation of the Plan.

**"Confirmation Order"** means the Court order confirming the Plan and authorizing the Exit Financing.

**"OCC"** means the official committee of unsecured creditors appointed under Section 1102 by the OUST.

**"Creditor Trust"** means that certain Trust for the Benefit of the Creditors of Karykeion, Inc. established on the Effective Date pursuant to the Creditor Trust Agreement.

**"Creditor Trust Agreement"** means the agreement pursuant to which the Creditor Trust will be formed and implemented, substantially the final version of which shall be Filed by the Exhibit Filing Date and become Exhibit 3 to the Plan.

**"Cure Payment"** means the payment of cash or the distribution of other property (as the parties may agree or the Court may order), as necessary to cure defaults under an executory contract or unexpired lease of Debtor so that Avanti may assume the contract or lease pursuant to Section 1123(b)(2).

**"Debtor"** means Karykeion, Inc.

**"Debtor's Counsel"** means Weiss & Spees, LLP.

**"Disallowed Claim"** means a Claim, or any portion thereof, that: (a) is not listed on the Debtor's Schedules, or is listed therein as contingent, unliquidated, disputed, or in an amount

Printed on Recycled Paper

equal to zero, and whose holder has failed to timely file a proof of Claim; or (b) the Court has disallowed.

**"Disbursing Agent"** means Insolvency Services Group, LLC. the entity employed or retained by the Reorganized Debtor to serve as disbursing agent under the Plan.

**"Disclosure Statement"** means the disclosure statement to accompany the Plan, as it subsequently may be modified or amended.

**"Disputed Claim"** means a claim to which a proof of claim is filed or is deemed filed under Rule 3003(b)(1) or a proof of Interest was filed or deemed filed under Rule 3003(b)(2); and; (b) As to which:

a.    An objection: (1) has been timely filed; and (2) has not been denied by a final order or withdrawn; or

b.    That claim is listed on Debtor's schedules as disputed, contingent or unliquidated.

**"Effective Date"** means the first Business Day (a) that is at least ten days after the Debtor or the Creditor Trust receive the first payment of AB 1383 Funds.

**"Estate"** means the estate created in the Case under section 541.

**"Filed or "filed"** means duly and properly filed with the Court and reflected on the Court's official docket.

**"Final Order"** means an order or judgment of the Court entered on the Court's official docket:

(a)    that has not been reversed, rescinded, stayed, modified, or amended;

(b)    that is in full force and effect; and

(c)    with respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (2) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

Printed on Recycled Paper

**"General Unsecured Claim"** means a Claim that is not an Administrative Claim, a Prime Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, a Secured Tax Claim, an Other Secured Claim, or the CMS Claim.

**"HPDG"** means Huntington Park Doctors Group, LLC.

**"Interest"** means the interest, whether or not asserted, of any holder of an equity security of the Debtor, as defined in Section 101(17).

**"Liquidating Trustee"** means Tom Paccioretti of Broadway Advisors, LLC.

**"Mission Hospital"** means the property located at 3111 East Florence Avenue, Huntington Park, CA 90255.

**"MOB"** means the Medical Office Building located at 3100 East Florence Avenue, Huntington Park, CA 90255.

**"Non-Ordinary Course Administrative Claim"** means any Administrative Claim other than an Ordinary Course Administrative Claim, a Professional Fee Claim, a Cure Payment, or a U.S. Trustee Fee.

**"Ordinary Course Administrative Claims"** means Administrative Claims based upon liabilities that the Debtor incurs in the ordinary course of its business for goods and services and that are unpaid as of the Effective Date. Ordinary Course Administrative Claims do not include Professional Fee Claims, 503(b)(9) Claims, Cure Payments or U.S. Trustee Fees.

**"OUST"** means the Office of the United States Trustee for the Central District of California.

**"Petition Date"** means September 22, 2008.

**"Plan"** means this "First Amended Chapter 11 Plan of Liquidation Proposed by the Debtor (Dated January 18, 2010)" as it subsequently may be modified or amended.

**"Priority Claim"** means an Allowed Claim entitled to priority against the Estate under Sections 507(a)(1), 507(a)(4), 507(a)(5), or 507(a)(7).

**"Priority Tax Claim"** means an allowed claim entitled to priority against the Estate under Section 507(a)(8). Priority Tax Claims do not include any Claims incurred after the Petition Date.

Printed on Recycled Paper

1    **"Professional Fee"** means a claim under Sections 327, 328, 330, 331, 503, or 1103 for
2    compensation for professional services rendered or expenses incurred for which the Estate is
3    liable for payment.

4    **"Pro-rata"** means proportionately so that the ratio of (a) the amount of consideration
5    distributed on account of a particular Allowed Claim to (b) the Allowed Claim, is the same as the
6    ratio of (x) the amount of consideration available for distribution on account of Allowed Claims in
7    the Class in which the particular Allowed Claim is included to (y) the amount of all Allowed
8    Claims of that Class.

9    **"Rubin Trust"** means the Rubin and Laurie Rubin 2007 Irrevocable Trust.

10   **"Rule"** means the Federal Rules of Bankruptcy Procedure.

11   **"Schedule of Assumed Agreements"** means the schedule of executory contracts and
12   unexpired leases that the Debtor will assume on the Effective Date. On or before 10 days prior to
13   the Confirmation Hearing, Debtor will File the initial Schedule of Assumed Agreements and serve
14   it on the parties to agreements listed on the schedule.

15   **"Schedule of Rejected Agreements"** means the schedule of executory contracts and
16   unexpired leases that Debtor will reject on the Effective Date. On or before 10 days before the
17   Confirmation Hearing, the Schedule of Rejected Agreements will be Filed and served on the
18   parties to agreements listed on that schedule.

19   **"Schedules"** means the Schedules of Assets and Liabilities filed by Debtor as such
20   Schedules may have been, or may subsequently be, amended before the Effective Date.

21   **"Secured Claim"** means a Claim, including a Secured Tax Claim and Other Secured
22   Claim, that is secured by a lien on a Debtor's property. A Claim is a Secured Claim only to the
23   extent of the value of the claimholder's interest in the collateral or to the extent of the amount
24   subject to setoff, whichever is applicable, and as determined under Section 506(a).

25   **"Sterling"** means Sterling Bank.

26   **"U.S. Trustee Fees"** means fees or charges assessed against the Estate pursuant to 28
27   U.S.C. § 1930.

28

Printed on Recycled Paper

**B.      RULES OF CONSTRUCTION.**

1.      The rules of construction in Section 102 apply to this Plan to the extent not inconsistent herewith.

2.      Rule 9006(a) applies when computing any time period under the Plan.

3.      A term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Code or the Rules.

4.      The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement.

5.      Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

6.      Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.  No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially negatively affected.

7.      Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

8.      Unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

9.      Unless otherwise specified, all references to Sections or Exhibits are references to this Plan's Sections or Exhibits.

10.      The words "herein," "hereto," "hereunder," and other words of similar import refer to this Plan in its entirety rather than to only a particular portion hereof.

Printed on Recycled Paper