**FILED & ENTERED**

AUG 16 2010

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** adomingu **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>Karykeion, Inc.,<br><br>Debtor(s). | Case No: 1:08-bk-17254-MT<br><br>Chapter: 11<br><br>**MEMORDANDUM OF DECISION**<br><br>**RE: DEBTOR'S MOTION TO VALUE THE SECURED CLAIM OF CARDINAL HEALTH**<br><br>Date: June 29, 2010<br>Time: 11:00am<br>Location: Courtroom 302 |

**I. Background**

Commencing February 28, 2006, Karykeion ("debtor")[1] made the first in a series of five promissory notes to John Mulroe ("Mulroe") or Affordable Properties ("Affordable"). The first note was for $275,000 and included a security agreement in favor of Mulroe. On February 28, 2006, Mulroe recorded a financing statement with the California Secretary of the State. The note, security agreement, and financing statement mention only Mulroe, not Affordable. The parties subsequently raised the amount borrowed under the note to $625,000. All amended notes referenced the security agreement. On June 16, 2006, debtor made a note, in the

---

[1] Bertha Anderson, Edward Rubin, and Mitchell Rubin, cosigned with the debtor on some of the notes. Their presence as signatories does not affect the outcome of the decision and so they will not be regularly mentioned in relation to the notes.

- 1 -

amount of $375,000, for the benefit of Affordable. The note gave a security interest to Affordable. On June 23, 2006, Affordable recorded a financing statement. Affordable terminated the financing statement on October 17, 2006. Affordable and the debtor subsequently amended the note to reflect the amount of $805,000. On August 8, 2006, debtor made a note for the benefit of Mulroe. This note referenced Mulroe's initial security interest. This note, after subsequent amendment, was in the amount of $820,000. On November 28, 2006, the debtor made another note in favor of Mulroe. This note again referenced the initial security agreement. This note was in the amount of $1,250,000. On February 2, 2007, debtor made out a note in the amount of $2,200,000 solely for the benefit of Affordable. This note ("fifth note") declares the prior two notes, in favor of Mulroe, null and void. The note references the security agreement, in favor of Mulroe, created by the first note. At the time the note was created, Affordable did not have a valid financing statement on file. Mulroe signed an acknowledgment of the note. Debtor did not repay this final note. On April 26, 2007 debtor and Edward Rubin sued Mulroe and Affordable in the Los Angeles Superior Court, alleging usury and fraud. Mulroe and Affordable filed cross complaints. On November 2, 2007, the parties agreed to a global settlement. The settlement provided for a stipulated judgment in favor of Mulroe and Affordable. The settlement also provided that Mulroe and Affordable could record an abstract of judgment if the settling parties did not make the payments required by the settlement. The stipulated judgment was in the amount of $1,000,000. On September 22, 2008, debtor filed for bankruptcy.

Prior to filing for bankruptcy, the debtor and cosignors to the settlement agreement defaulted on their payments under the settlement; Affordable and Mulroe filed an action in state court to enforce the settlement. Debtor removed the lawsuit to this court. On June 22, 2009, debtor filed a lawsuit against the Mulroe. Debtor sought to avoid the liens. On February 21, 2010, Mulroe, Affordable and the debtor reached a global settlement. The settlement gave the debtor any lien held by Mulroe and Affordable. On June 1, 2010, the debtor, joined by the Official

Committee of Unsecured Creditors ("Creditors Committee"), filed a motion to value the secured claim of Cardinal Health ("Cardinal").[2]

Cardinal claimed to be a secured creditor in this case. No party, up to this point, has disputed that Cardinal holds a properly perfected security interest. Whether Cardinal holds a secured claim turns on whether Mulroe holds a properly perfected senior lien. If Mulroe holds a senior lien, Cardinal is likely unsecured or very undersecured because the debtor's assets, on the date of filing, did not have enough value to secure Cardinal's junior lien. If Mulroe does not have a valid lien, then Cardinal is likely fully secured.  This memorandum focuses solely on the question of whether Mulroe/Affordable has a lien senior to Cardinal's lien. [3]

## II. Discussion
### A. Status of Promissory Notes

To have a superior security interest, an entity must satisfy all of the prongs outlined in California Uniform Commercial Code § 9203.  See Leflore v. Grass Harp Productions, Inc., 57 Cal. App. 4th 824 (1997) (applying former version of Cal. U. Com. Code § 9203, which is essentially the same as current version).  A security interest attaches when it becomes enforceable against the debtor with respect to the collateral, with attachment occurring as soon as all three prongs exist. Id.  Cal. U. Com. Code § 9203, in pertinent part, provides:

> (a) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.
> (b) Except as otherwise provided in subdivisions (c) to (i), inclusive, a security interest is enforceable against the debtor and third parties with respect to the collateral only if each

---

[2] The above facts are not in dispute and the following memorandum does not rely on any disputed facts.
[3] The final determination of Cardinal's secured status turns on the amount of their claim and the value of the debtor's property on the day of filing. The parties agreed to reserve this question until the validity of Mulroe's alleged lien was decided.

of the following conditions is satisfied:

(1) Value has been given.

(2) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party.

(3) One of the following conditions is met:

(A) The debtor has authenticated a security agreement that provides a description of the collateral….

A security agreement may provide that collateral secures future advances. Pursuant to Cal. U. Com. Code § 9204 (c): "A security agreement may provide that collateral secures, or that accounts, chattel paper, payment intangibles, or promissory notes are sold in connection with, future advances or other value, whether or not the advances or value are given pursuant to commitment."

Uniform Commercial Code § 9-204, Comment 5 provides, "[u]nder subsection (c) collateral may secure future as well as past or present advances <u>if the security agreement so provides</u>. (Emphasis added). . . . Indeed, the parties are free to agree that a security interest secures any obligation whatsoever. Determining the obligations secured by collateral is solely a matter of construing the parties' agreement under applicable law. . ."

In order to perfect the security interest, a financing statement must be filed. <u>Id</u>.; See also Cal. U Com. Code § 9310 (perfection of a security interest requires the filing of a financing statement.) A financing statement normally must be in the name of the beneficiary to the security agreement. <u>Leflore</u>, 57 Cal. App. 4th at 834 (finding that a financing statement did not perfect a security agreement held by a related company with a similar name.) If a party not named in the financing agreement seeks to claim that the financing statement perfects their security agreement, the party must be an agent of the named party, an amendment to the financing agreement must be filed, or the party seeking to use the security agreement must have been the surviving party to a merger with the named party. Cal. U. Com. Code § 9511.

Thus, the terms and current status of each promissory note must be considered in order to determine whether the security interest attached to each note, and whether it was perfected as to each note.

### 1. First Note

The first note was made by debtor for the benefit of Mulroe. Whether the security interest attached to collateral requires analysis of the factors set forth in Cal U. Com. Code § 9203. As the loan proceeds were given to Karykeion by Mulroe, value has been given. The note describes the collateral as follows: "Karykeion, Inc. will provide a lien on all of its equipment and accounts receivables." This adequately describes the collateral for the debtor. Debtor had rights in the accounts receivable and equipment that it owned. The parties created a valid security interest in the first note. The note did not contain any future advances language. Mulroe properly perfected this security agreement with a UCC-1 financing statement, describing a security interest in all equipment and accounts receivable. Mulroe filed this financing statement, with the California Secretary of State on February 28, 2006. Debtor subsequently paid the note in full, terminating the properly perfected security agreement contained in the first note. Mulroe's financing statement remains on file.

### 2. Second Note

The second note was made by debtor for the benefit of Affordable. Affordable turned over the loan proceeds to Karykeion, giving value. Karykeion has rights in the accounts receivable and equipment that it owned. The Second Note references the creation of a secured interest and describes the property attached as all of Karykeion's equipment and accounts receivable. The note creates a security interest. Affordable perfected this security interest by filing a UCC-1 on June 23, 2006. Affordable, however, terminated this financing statement on October 17, 2006. No financing statement naming Affordable remained on file after this termination. The second

note contained no future advances language and the note was paid in full. No security agreement remains from the second note and no financing statement remains on file.

### 3. Third Note & Fourth Notes

The third and fourth notes were made by debtor for the benefit of Mulroe. Both notes referenced the security agreement created by the first note. Thus, both notes created valid security interests, perfected by the initial UCC-1 filing. The following language in the fifth note terminated both the third and the fourth notes:

> **Whereas on this date**, for the value received, Edward Rubin MD, ("borrower") jointly and severally promises to pay to Affordable Properties or its assigns $2,220,000.00. By signing this Promissory Note, Borrower, Guarantors, Affordable Properties and *John Mulroe acknowledge that this Promissory Note replaces the Promissory Notes dated August 8, 2006 and November 28, 2006 and all the Amendments from those Notes*. *Those Notes and Amendments will become null and void*, however Borrower retains the right to receive allocation information and information verifying the amount of interest paid and thus reserves its rights. (Italicized bold emphasis added).

### 4. Fifth Note

The fifth note was made by Edward Rubin, guaranteed by debtor, for the benefit of Affordable Properties or its assigns. Pursuant to the fifth note, Affordable lent $2.2 million to the makers, giving value. The note did not include a description of the property purporting to secure the note. The note only included the language: "COLLATERAL:  The accounts receivable and equipment lien dated February 26, 2006 has not been removed and will remain in place until the full payment of this loan." This language only references a lien in favor of a third party,

John Mulroe. Further, John Mulroe, in signed acknowledgment of the fifth note, indicates that the fifth note, made solely in favor of Affordable, voids and replaces the outstanding loans the debtor owed to him. Thus, it is far from clear he had a valid lien once the note was signed. Because the note does not adequately describe the property subject to a purported security interest and the only relevant language references a third parties' lien, no security agreement attached to the note. Because no property is adequately described, the court does not have to reach the issue of whether debtor had an interest in the property.

Debtor argues that the court must hold an evidentiary hearing on this point. Debtor argues that the note's language is ambiguous as to whether a security interest attached to the fifth note. Debtor argues that the court must allow for depositions and testimony to resolve the note's contradictory positions of voiding Mulroe's notes while referencing his lien. An evidentiary hearing is not necessary. As described above, the language of the note does not properly describe the collateral to be attached. Further, and more importantly, even if the court held an evidentiary hearing, and found the parties meant to establish a security agreement, and the note met the requirements of Cal. U. Com. Code § 9203; the law establishes that such a security agreement was not perfected.

To have a perfected security interest, a security interest must be created and a financing statement must be on file. Cal. U Com. Code § 9310. That financing statement must include the name of the note's beneficiary. Cal. U. Com. Code § 9511. If a note is made out to one party and a financing statement is in the name of another party, the financing statement does not perfect the security agreement.[4] As described in the discussion of the second note, Affordable terminated its financing agreement on October 17, 2006; prior to the making of the fifth note. The only financing agreement on file as of February 7, 2007, was the original financing agreement naming John Mulroe. Affordable was not named on this financing

---

[4] Exceptions to this rule exist if a party later assigns a debt and amends the financing statement or a note's beneficiary merges with another entity or an authorized agent exercises the power of the notes' beneficiary. The debtor did not argue or present any facts showing that any of these exceptions apply.

statement. Because the financing statement did not name Affordable, it did not perfect any security agreement the fifth note could have created. LeFlore, 57 Cal. App. 4th at 834 (finding a financing statement naming a related company did not perfect the security agreement held by a note's beneficiary); In re Adirondack Timber, 2010 Bankr. LEXIS 1420 (Bankr. N.D.N.Y April 28, 2010)(similarly finding that a financing statement filed by a parent company did not perfect the lien of a subsidiary).

**B. Status of Settlement Agreement**

Based on the above analysis, no perfected security interest existed at the time the parties entered into the November 2, 2007, settlement agreement. The question is then whether the settlement agreement created a perfected security agreement. It did not.

As indicated above, all of the requirements of Cal. U. Com. Code § 9203 must be met before a security interest can attach to a debtor's collateral. Expeditors Int'l of WA, Inc. v, Official Creditors Comm of CFLC (In re CFLC) requires that a document, purporting to create a security interest, include: "[1] language in a written agreement that objectively indicates the parties' intent to create a security interest and [2] the presence of a subjective intent of the parties to create a security interest." 166 F.3d 1012, 1016 (9th Cir. 1999). An attached security interest is perfected by the filing of a UCC Financing Statement. A Financing Statement may be filed prior to the creation of a security agreement.

The State Court Settlement does not contain any language that objectively indicates that the parties intended to create a security interest. Therefore, there is no need to reach the second step, the determination of the presence of subjective intent. Further the settlement provides for the entry of a stipulated judgment, and recording of an abstract of judgment upon a default by the Debtor or its co-obligors, unnecessary acts if the settlement created its own security interest.

- 8 -

Debtor argues that Mulroe did not intend to waive his lien.  That is irrelevant where Mulroe did not have a lien to waive. It is true that Mulroe's February 28, 2006, financing statement has not been waived, as it continues until February 28, 2011, unless terminated by Mulroe.  However, a lien/security interest is not created by the filing of a financing statement alone. See Needle v. Lasco Industries, Inc., 10 Cal.App.3d 1105 (1970) (financing statement cannot in itself serve as a security agreement because it lacks evidence of an agreement to grant the creditor a security interest) All of Mulroe's notes had been satisfied at the time the parties entered into the settlement agreement. Thus, no lien existed and the court does not need to consider whether Mulroe intended to waive something that did not exist.

Debtor argues that it may correct any deficiency in Mulroe's security interest by ratifying, confirming, and regranting a security interest to secure the obligations of the debtor under the State Court Settlement Agreement. In effect, the debtor appears to be rewriting a two and half year old settlement agreement in include the grant of a security agreement. It is unclear where the debtor gets this authority to rewrite the agreement. Debtor appears to argue that 11 U.S.C. § 551 allows a debtor to perfect a lien that it avoided for the benefit of the estate. This interpretation reads too much into § 551. Section 551 simply states that any avoided transfer is preserved for the benefit of the estate. This allows a debtor to step into the shoes of the transferee; it does not allow a debtor to perfect a transfer that did not properly occur. See In re Seibold, 351 B.R. 741, 746 (Bankr.D.ID 2006).

Debtor also indicates that it may use its authority under 11 U.S.C. § 363(b) to transfer a security interest to Mulroe post-petition. Such a transfer would impair Cardinal's interest in the accounts receivable and equipment. Pursuant to 11 U.S.C. § 363(e), debtor would need to adequately protect Cardinal from the subsequent reduction of Cardinal's interest in the collateral. Because debtor does not provide any adequate protection to Cardinal, it may not re-grant a security interest pursuant to § 363(b).

Debtor further argues that Cardinal knew or should have known that Mulroe had a prior financing statement and any interest it took in the accounts receivable would be junior to Mulroe's interest. It argues that a contrary finding allows Cardinal a windfall at the expense of the estate. Cardinal disputes that it knew of Mulroe's lien at the time it acquired an interest in the collateral. Whatever knowledge Cardinal had or should have had is irrelevant. At the time Cardinal took the security interest, Cardinal took its interest subject to any properly perfected security interest of Mulroe. As described above, Mulroe did not have a properly perfected security interest at the time Cardinal took its interest and he did not acquire one at any time between then and the debtor filing for bankruptcy; leaving Cardinal with a superior lien. The estate stepping into Mulroe's shoes does not change the equities of the situation. The court cannot create a security interest where none existed, providing a windfall to the estate at the expense of Cardinal.

Finally, Debtor argues that only the debtor has standing to object to Mulroe's security interest, and not a creditor who should have known about Mulroe's financing statement. Debtor cites no basis for this proposition and the court can find no law to support it. Cases regularly allow creditors to challenge the priority of competing security interests. See Leflore, 57 Cal. App. 4th at 824.

//
//
//
//
//
//
//
//
//
///

In light of this decision, parties should meet and confer to resolve how much Cardinal is owed. The debtor should file an objection to the amount of Cardinal's claim if no agreement is reached. Cardinal, as prevailing party, is instructed to upload an order in accordance with this ruling.

DATED: August 16, 2010

_____
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM**:

**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4**) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **MEMORDANDUM OF DECISION**

**RE: DEBTOR'S MOTION TO VALUE THE SECURED CLAIM OF CARDINAL HEALTH**

was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of _____, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Simon Aron    saron@wrslawyers.com
- Theresa W Bangert    tbangert@sheppardmullin.com
- Manuel A Boigues    bankruptcycourtnotices@unioncounsel.net
- J Scott Bovitz    bovitz@bovitz-spitzer.com
- Katherine Bunker    kate.bunker@usdoj.gov
- Young K Chang    bklaw3@yahoo.com
- Kathryn F Evans    kevans@klehr.com
- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
- Jeffrey K Garfinkle    bkgroup@buchalter.com, jgarfinkle@buchalter.com
- Paul R. Glassman    glassmanp@gtlaw.com
- Matthew A Gold    courts@argopartners.net
- Michael I Gottfried    mgottfried@lgbfirm.com, msaldana@lgbfirm.com
- Fredric J Greenblatt    fjg@greenblattlaw.com
- Peter D Holbrook    pholbrook@buchalter.com, amelanson@buchalter.com
- Brian L Holman    b.holman@mpglaw.com
- Mark D Houle    mark.houle@pillsburylaw.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- Andy Kong    Kong.Andy@ArentFox.com
- John P Kreis    jkreis@attglobal.net
- Mary D Lane    mlane@pszjlaw.com
- George C Lazar    glazar@foxjohns.com
- Scott Lee    slee@lbbslaw.com
- Samuel R Maizel    smaizel@pszjlaw.com, smaizel@pszjlaw.com
- John B Marcin    jbm@marcin.com
- Craig G Margulies    cmargulies@margulies-law.com

- Elissa Miller    emiller@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
- Alan I Nahmias    anahmias@mbnlawyers.com, jdale@mirmanbubman.com
- David L. Neale    dln@lnbrb.com
- Christopher R Nelson    cnelson@erlaw.com
- Scott H Noskin    snoskin@mbnlawyers.com, krose@mbnlawyers.com;amcdow@mbnlawyers.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Richard Park    Richard.Park@usdoj.gov
- Neil M Peretz    neil.peretz@usdoj.gov
- Robert N Phan    rphan@garciaphan.com
- Steven G Polard    spolard@perkinscoie.com
- Thomas H Prouty    thomas.prouty@troutmansanders.com, tina.diego@troutmansanders.com
- Christian L Raisner    bankruptcycourtnotices@unioncounsel.net, craisner@unioncounsel.net
- Holly Roark    holly@roarklawoffices.com
- Scott A Schiff    sas@soukup-schiff.com
- Nathan A Schultz    schultzn@gtlaw.com
- Steven A Schwaber    schwaberlaw@sbcglobal.net, sasecf@gmail.com
- Benjamin Seigel    bseigel@buchalter.com, IFS_filing@buchalter.com
- Seth B Shapiro    seth.shapiro@usdoj.gov
- Eric J Siegler    erics123@aol.com
- Adam M Starr    starra@gtlaw.com
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Annie Verdries    verdries@lbbslaw.com
- Ryan T Waggoner    rwaggoner@erlaw.com
- Michael H Weiss    mweiss@fms-law.com, lm@weissandspees.com;jb@weissandspees.com
- Michael H Weiss    mw@weissandspees.com, lm@weissandspees.com;jb@weissandspees.com

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page