FILED & ENTERED

AUG 16 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY adomingu DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>Karykeion, Inc.,<br><br><br>Debtor(s). | Case No: 1:08-bk-17254-MT<br><br>Chapter: 11<br><br>**MEMORANDUM OF DECISION**<br><br>**RE: BLC2's MOTION FOR PAYMENT OF ADMINISTRATIVE CLAIM**<br><br>Date: July 21, 2010<br>Time: 11:00am<br>Location: Courtroom 302 |

**I. Background**

In February of 2007, Karykeion ("debtor") borrowed $1.975 million and $515,000 from CDC Direct Capital ("CDC"). In return, CDC took a 2nd priority deed of trust in the debtor's two real property assets, Mission Hospital and the Medical Office Building. CDC later assigned this note and security interest to Business Loan Conduit #2 ("BLC2"). Unbeknownst to CDC or BLC2, debtor, in early 2007, transferred Mission Hospital and the Medical Office Building to a group commonly known as the CIG group. In an effort to hide this transfer, the debtor continued to directly pay BLC2's promissory notes. Until the bankruptcy, debtor's subterfuge worked; BLC2 remained unaware of the transfer. Filing the bankruptcy, however, revealed the transfer. At the onset of the case, the debtor proposed treating BLC2 as a partially secured

- 1 -

creditor. As a partially secured creditor, debtor paid BLC2 adequate protection payments. Over the course of the case, these payments amounted to more than $125,000. Debtor, as its cash flow worsened, only sporadically made the payments. After the debtor filed, BLC2 initiated a state court action against Edward Rubin, guarantor to CDC's initial notes. In May of 2009, the debtor, Rubin, and BLC2 signed a stipulation. As part of the stipulation the debtor would continue making payments to BLC2 and make up the arrearages in its post-petition payments. Debtor also agreed to treat BLC2 as fully secured and confirm a plan treating them as fully secured. BLC2, agreed to waive the debtor's violation of the due on sale clause. Debtor had until December 31, 2009, to confirm a plan including these provisions. Debtor proved unable to make continuing payments and no plan encompassing the settlement was confirmed. In early 2010, the debtor proposed a new liquidating plan. This liquidating plan did not encompass the settlement and instead treated BLC2 as a fully unsecured creditor.

BLC2 objected to the liquidating plan, which has now been withdrawn. BLC2 now makes a motion to treat its approximate $2.9 million claim as an administrative claim. BLC2 argues that the settlement entitled it to a fully secured position and if the debtor does not treat it as fully secured, then it is entitled to damages in the full amount of its claim. Because these damages arose post-petition, BLC2 argues they are entitled to administrative priority.

**II. Discussion**

    **A.     No Breach of the Settlement Agreement**

BLC2 argues that debtor's failure to confirm a plan by December 31, 2009, is a breach of the settlement agreement. It is not. Paragraph 3, describing BLC2's treatment under a proposed plan of reorganization, indicates that:

    Plaintiff would be treated as fully secured for purposes of these payments, adequate protection payments, and for the plan of reorganization ultimately adopted in this

> case,.... If no such plan is timely confirmed as per below, we would be treated on a going forward basis after that point, as an unsecured creditor to the extent deemed unsecured.... There would be a drop dead date of December 31, 2009, by which such a plan acceptable to us would have to be confirmed....

This language requires the debtor to treat BLC2 as fully secured in any plan confirmed prior to December 31, 2009. The language does not make a failure to confirm such a plan a breach of the settlement agreement.  In fact, ¶3 with the language "if no such plan is timely[1] confirmed as per below, we would be treated... as an unsecured creditor" expressly contemplates a failure to confirm a plan, prior to December 31, 2009, that treats BLC2 as fully secured.  According to the settlement, BLC2 becomes an unsecured creditor.

BLC2 argues that the December 31, 2009 date was included for its benefit and it may waive the provision.  The law allows a party to waive a term of a contract when that term is solely for the benefit of the party waiving the terms. *See In re Marineland Ocean Resorts, Inc.* 242 B.R. 748, 757 (Bankr.M.D.FL 1999)(allowing a party to a franchise agreement to waive the requirement that they consent in writing prior to the assignment of the agreement). BLC2 has not presented adequate evidence to show that the December 31, 2009, date was included solely for its benefit. The date benefits BLC2 in that it requires the debtor try and confirm a plan that treats BLC2 as fully secured and the date entitles BLC2 to a certain number of plan payments.  The time limit however also confers a benefit on the debtor, for once the date passes the debtor no longer must propose a plan that treats BLC2 as fully secured, reopening the debtor's option to vary BLC2's treatment. Thus, the date does not appear to be a covenant inserted solely for the benefit of BLC2, preventing BLC2's waiver. [2]

---

[1] BLC2 omits timely from its motion for an administrative expense. BLC2 uses the phrase "if no such plan is confirmed." BLC2 quotes the debtor's synopsis of the settlement agreement, included in debtor's motion to approve the settlement agreement. The settlement agreement itself uses the word timely in the relevant phrase.

[2] Because the court finds that BLC2 cannot waive the provision, the court does not need to reach the argument that BLC2 is only treated as an unsecured creditor if no plan is confirmed.

- 3 -

BLC2 further argues that even if the debtor did not breach the settlement agreement, the agreement requires the debtor make loan payments until the loan is paid in full, effectively creating an administrative expense in the amount of the unpaid portion of the loan. For this interpretation, BLC2 relies on ¶2 of the agreement. Paragraph 2, in relevant part, requires the debtor to make all payments required under the original note and payments of $3,662 on a monthly basis. Paragraph 3, as quoted above, only requires the debtor to treat BLC2 as fully secured until December 31, 2009 or in any plan confirmed prior to that date. If a plan is not timely confirmed, BLC2 reverts back to its status as of the case filing; an undersecured creditor to an unknown extent.  As an undersecured creditor going forward, BLC2 is entitled to keep any payments received pursuant to the settlement agreement and is entitled to all payments coming due between consummation of the agreement and December 31, 2009, but it is not entitled to full payment of its pre-petition claim on a going forward basis. Thus, when BLC2 secured status changed on December 31, debtor no longer had to make payments required under ¶2.[3] Thus, the debtor did not breach the settlement agreement by stopping payments to BLC2 after December 31, 2009 and not proposing a plan that treated BLC2 as fully secured.

## B. BLC2's CLAIM DOES NOT QUALIFY AS AN ADMINISTRATIVE EXPENSE

Even if debtor breached the agreement and BLC2 is entitled to a $2.9 million claim for that breach, the breach does not qualify as an administrative expense because the claim does not meet either part of the administrative priority test. To be entitled to administrative priority: (1) a debt must arise from a transaction with the debtor-in-possession, and (2) be beneficial to the debtor-in-possession in operation of the business. *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976); *In re Sunarhauseerman, Inc.*, 126 F.3d 811, 816 (6th Cir. 1997).

---

[3] This would not be true if BLC2 was fully secured on the day of the filing. There is no evidence in the record that suggests that this was the case.

- 4

### 1. BLC2's claim is not a post-petition claim

For a debt to arise from a transaction with the debtor in possession, the debt must be incurred post petition. *Abercombie v. Hayden Corp. (In re Abercombie)* 139 F.3d 775 (9th Cir. 1998), *Kadjevich v. Kadjevich (In re Kadjevich)* 220 F.3d 1016 (9th Cir. 2000). The Kadjevich case involved a somewhat similar situation to the one at issue. In *Kadjevich*, the court dealt with a dispute between two brothers over the estate of their deceased mother. *Id.* In 1980, Angela Kadjevich died. At the time of her death, she owned a number of properties. *Id.* One son, Robert Kadjevich, administered the properties. In 1983, his brother, Nicholas Kadjevich sued for an accounting. The parties settled but Robert breached the settlement. In 1985, Nicholas sued Robert for fraud. In 1987, Robert filed a Chapter 11 bankruptcy proceeding. In 1990, post-petition, Robert and Nicholas again settled the dispute. Robert, however, breached this post-petition settlement agreement. Nicholas went back to the state court and obtained a fraud judgment. *Id.* The state court found for Nicholas and awarded damages and $150,000 in lawyers fees for bad-faith breach of the post-petition settlement agreement. *Id.* In September of 2009, the estate converted to one under Chapter 7. Nicholas and the Trustee came to an agreement where Nicholas would credit bid his claim of $150,000 for breach of the post-petition settlement agreement. *Id.* at 1019. The bankruptcy court overruled this settlement because it found the $150,000 a pre-petition unsecured claim. The Ninth Circuit upheld this finding on the basis that the damages award, and the award of attorneys fees for the breach of a post-petition settlement agreement, was a pre-petition claim because the source of the award was a pre-petition fraud cause of action.

Similarly, BLC2 has a pre-petition claim for breach of its promissory note and deed of trust. The parties settled this dispute post-petition with an agreement that the debtor would treat the note as secured in any plan and would continue to make payments under the note. The debtor allegedly breached this settlement agreement. Under *Kadjevich*, a court does not focus on when the alleged breach occurred but instead looks at the nature of the transaction giving rise to the settlement and the alleged breach. In this case, BLC2 had a pre-petition claim that the

- 5 -

parties settled and the debtor allegedly breached. Because the "'source'" of the settlement agreement and the alleged $2.9 million in damages is the breach of the pre-petition promissory note, the $2.9 million does not qualify as an administrative expense because it is not based on a post-petition transaction. *See id*. at 1020.[4]

**2. There is no evidence that the settlement agreement benefited the debtor in possession in operating its business.**

There is no evidence that the settlement aided the debtor. The only term of the settlement that might be construed as aiding the debtor is BLC2's agreement to waive the non-monetary default caused by the debtor's pre-petition violation of the due on sale clause. It is unclear however, what benefit this waiver provided. If BLC2 had waived the due on sale clauses, debtor could have treated BLC2 as an unimpaired class and BLC2 would not have had to vote. This benefits BLC2 and the benefit to the debtor is unclear.

There was some discussion of whether the debtor's ability to put the BLC2 dispute aside for some period of time and not face litigation over the "due on sale fraud" was a benefit to the estate.  As there were so many moving parts to the case at that point and so many different considerations affecting the debtor's choices over what to litigate and which party would have been able to prevail on which claim, conclusions over how beneficial the settlement was to the estate would be speculative.  A benefit to the estate must be "actual" and not potential. *In re Dant & Russell*, 853 F.2d at 706. Averting possible litigation is not enough. *In re Allen Care Centers*, 175 B.R. 397 (D. Ct Or 1994)

Administrative expenses are a narrow category of expenses entitled to priority because without priority no party would provide services to the estate. Traditionally, courts interpret administrative expenses narrowly because giving some creditors a priority reduces the payout

---

[4] This result might be different for specific payments required under the agreement. BLC2 and the debtor, however, did not breach this issue

to lower priority creditors and unsecured creditors. If the breach of any court approved settlement agreement entitled the non-breaching creditor to priority status, the scope of priority creditors would be expanded to encompass creditors with pre-petition claims that settled these claims post-petition. This would prejudice other non-settling unsecured creditors and potentially allow a debtor to pick and choose which pre-petition creditors would be entitled to priority payment. This is antithetical to Code's goal of paying all similarly situated creditors equally.

BLC2 also argues that the court's finding under *In re A & C Properties*, that the settlement "was in the best interests of the estate" is res judicata that the settlement conferred a benefit to the estate under § 503. 784 F.2d 1377, 1380 (9th Cir. 1986). BLC2 relies heavily on *In re Hink & Son* to argue that the settlement agreement order was res judicta and now that they have relied on it, it must be enforced. 815 F.2d 1314 (9th Cir 1987) While this argument certainly had some initial appeal, this reads too much into *Hink & Son*. Here BLC2 has moved for an administrative expense claim which has a clear set of requirements under §503(b)(1)(A). The finding required for a Rule 9019 motion is a different issue than the finding required for an administrative expense. Settlements are preferred and great deference is given to the debtor. The "best interests of the estate" is a broad concept, encompassing a variety of benefits, often including the generic reduction in likely litigation costs. A §503(b) analysis, on the other hand, is to be strictly construed and a very specific and quantifiable benefit must be identified. Thus, the same issue was not previously litigated. In *Hink & Son*, the debtor assigned certain "sweetheart" leases to Cukierman. At a court hearing, Cukierman repeatedly confirmed that he understood that the rent could increase after assignment. After the assignment was complete and the rent raised, Cukierman appealed the order, arguing that the rent increase was prohibited by section 363(f)(3). The court rejected this argument and held that Cukierman had clearly indicated his consent to the increased rent term, his waiver of 365(f)(3) was relied on by the debtor, the trustee and the court, and he was estopped from making an opposite argument after that. This differs from the situation at bar. As described above, the best interest of creditors for purposes of a settlement and benefit to the debtor for purposes of an

administrative claim are different inquiries and a finding that a settlement is in the best interest of creditors does not preclude a finding that there is no benefit to the estate for an administrative priority finding.

While the $2.9 million claim in not an administrative claim, the debtor did represent that BLC2 was an undersecured creditor at the outset of the case and made approximately $125,000 in adequate protection payments. It appears that the debtor believed there was some amount of the claim still secured at the outset of the case. While the total claim of BLC2 must still be determined at a later stage of this case, it may be that the post-petition payments should be considered to have been paid towards the secured claim.  The specifics of what the debtor still owes and what other remedies BLC2 may have for the alleged breach are reserved for another day.

Solely the motion to allow an administrative expense claim in the full amount of BLC2's claim is DENIED. Any other issue arising out of this alleged breach was not adequately briefed and not argued at all. As the prevailing party, the debtor should upload an order in accordance with this ruling.

DATED: August 16, 2010

_____
United States Bankruptcy Judge

- 8 -

**NOTE TO USERS OF THIS FORM**:

**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4**) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **MEMORANDUM OF DECISION RE: BLC2's MOTION FOR PAYMENT OF ADMINISTRATIVE CLAIM**

was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of _____, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Simon Aron    saron@wrslawyers.com
- Theresa W Bangert    tbangert@sheppardmullin.com
- Manuel A Boigues    bankruptcycourtnotices@unioncounsel.net
- J Scott Bovitz    bovitz@bovitz-spitzer.com
- Katherine Bunker    kate.bunker@usdoj.gov
- Young K Chang    bklaw3@yahoo.com
- Kathryn F Evans    kevans@klehr.com
- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
- Jeffrey K Garfinkle    bkgroup@buchalter.com, jgarfinkle@buchalter.com
- Paul R. Glassman    glassmanp@gtlaw.com
- Matthew A Gold    courts@argopartners.net
- Michael I Gottfried    mgottfried@lgbfirm.com, msaldana@lgbfirm.com
- Fredric J Greenblatt    fjg@greenblattlaw.com
- Peter D Holbrook    pholbrook@buchalter.com, amelanson@buchalter.com
- Brian L Holman    b.holman@mpglaw.com
- Mark D Houle    mark.houle@pillsburylaw.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- Andy Kong    Kong.Andy@ArentFox.com
- John P Kreis    jkreis@attglobal.net
- Mary D Lane    mlane@pszjlaw.com
- George C Lazar    glazar@foxjohns.com
- Scott Lee    slee@lbbslaw.com
- Samuel R Maizel    smaizel@pszjlaw.com, smaizel@pszjlaw.com
- John B Marcin    jbm@marcin.com
- Craig G Margulies    cmargulies@margulies-law.com
- Elissa Miller    emiller@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com

- Alan I Nahmias    anahmias@mbnlawyers.com, jdale@mirmanbubman.com
- David L. Neale    dln@lnbrb.com
- Christopher R Nelson    cnelson@erlaw.com
- Scott H Noskin    snoskin@mbnlawyers.com, krose@mbnlawyers.com;amcdow@mbnlawyers.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Richard Park    Richard.Park@usdoj.gov
- Neil M Peretz    neil.peretz@usdoj.gov
- Robert N Phan    rphan@garciaphan.com
- Steven G Polard    spolard@perkinscoie.com
- Thomas H Prouty    thomas.prouty@troutmansanders.com, tina.diego@troutmansanders.com
- Christian L Raisner    bankruptcycourtnotices@unioncounsel.net, craisner@unioncounsel.net
- Holly Roark    holly@roarklawoffices.com
- Scott A Schiff    sas@soukup-schiff.com
- Nathan A Schultz    schultzn@gtlaw.com
- Steven A Schwaber    schwaberlaw@sbcglobal.net, sasecf@gmail.com
- Benjamin Seigel    bseigel@buchalter.com, IFS_filing@buchalter.com
- Seth B Shapiro    seth.shapiro@usdoj.gov
- Eric J Siegler    erics123@aol.com
- Adam M Starr    starra@gtlaw.com
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Annie Verdries    verdries@lbbslaw.com
- Ryan T Waggoner    rwaggoner@erlaw.com
- Michael H Weiss    mweiss@fms-law.com, lm@weissandspees.com;jb@weissandspees.com
- Michael H Weiss    mw@weissandspees.com, lm@weissandspees.com;jb@weissandspees.com

☐ Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page